IN THE UNITED STATES DISTRICT COURT FOR

THE WESTERN DISTRICT OF VIRGINIA

Roanoke    Division

TERRY K. OFORI,

      Plaintiff,

V.

                                  Case No. 7:23CV398-D

LESLIE J. FLEMING, et al.,

                Defendant(s).

CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE, VA
FILED

:   JUL 0 5 2023

LAURA A. AUSTIN, CLERK
BY: _____
DEPUTY CLERK

## CIVIL ACTION COMPLAINT.

### I. JURISDICTION AND VENUE.

1.     This is a Civil action authorized by 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the U.S., (Plus, § 1981, 85, & 1997d). The court has jurisdiction under 28 U.S.C., §§ 1331, 1367, and 1343(a)(3). Plaintiff seek(s) declaratory relief pursuant 28 U.S.C., §§ 2201 and 2202, Plus claim(s) for injunctive relief are authorized by 28 U.S.C., §§ 2283, 2284 and Rule 65 of the Federal Rules of Civil Procedure.

2.     The Western district of Virginia is an appropriate venue under 28 U.S.C., § 1391 (b)(2) because it is where the events giving rise to these claims occurred.

### II. PARTIES.

3.     The Plaintiff, Terry K. Ofori, (Pro Se) was—at all times mentioned herein—a prisoner of the state of Virginia in the custody

of the 'Virginia Department of Correction' (herein-after "VDOC/VA-DOC")
He is Confined in 'Wallens Ridge State Prison', (herein-after "W.R.S.P./WRSP"),
— Big Stone Gap, Virginia.

4.     The Defendants in this action are:

— Agent (1), Mr. Leslie J. Fleming, was the warden of WRSP.

— Agent (2), Mr. Carl A. Manis, was the warden of WRSP.

— Agent (3), Mr. J. Combs, was the Assistant Warden of WRSP.

— Agent (4), Mr. Anderson, was the Major (and then after) the
Assistant Warden of WRSP.

— Agent (5), Mr. J. L. Brown, was a Captain at/in WRSP (then he
became a/the Operations Manager at WRSP).

— Agent (6), Mr. W. Todd Farris, was the CHAP at WRSP.

— Agent (7), MS. R.D. Young, was the Operations Manager, at WRSP.

— Agent (8), Mr. R.J. Cochrane, was a lieutenant, at WRSP.

— Agent (9), B.L. Hughes, is a lieutenant at WRSP.

~~— Agent (10), D.S. Mullins, is a lieutenant at WRSP.~~

— Agent (11), Mr. Joseph B. Stallard, is a Unit Manager at WRSP.

— Agent (12), Mr. Jones, was the Law Librarian at WRSP.

— Agent (13), Mr. C.W. Franks, is a IHO at WRSP.

— Agent (14), Mr. W.R. Hensley, is a IHO at WRSP.

— Agent (15), MS. B. J. Ravizee, is the institutional Ombudsman at WRSP.

— Agent (16), MS. S. Stallard, is the Food Service Supervisor at WRSP.

— Agent (17), Mr. Samuel A. Caughran, was a Counselor at WRSP.

— Agent (18), Mr. M. Napier, is a C/o at WRSP.

— Agent (19), Mr. R. Stout, is a C/o at WRSP.

~~— Agent (20), Mr. B. Roberts, is a C/o at WRSP.~~

— Agent (21), Mr. M. Wright, was a Sargent at WRSP.

— Agent (22), Mr. J. Bryant, is/was a Sargent at WRSP.

2.

—Agent (23), MS. M.L. Daniel, is a C/o at WRSP.

—Agent (24), Mr. I. Clark, is a C/o at WRSP.

—Agent (25), Mr. S.R. Farmer, is a C/o at WRSP.

—Agent (26), Mr. T. Leedy, is a C/o at WRSP.

—Agent (27), Mr. I.K. Thomas, is a C/o at WRSP.

—Agent (28), Mr. W.K. Smith, is a C/o at WRSP.

—Agent (29), Mr. M.D. Powers, was a C/o at WRSP.

—Agent (30), Mr. Byington, is/was a C/o at WRSP.

—Agent (31), Mr. John Doe, was a C/o about 5'8/9" tall,
Brown(ish)/Red(ish) hair, regular build, and he
worked—normally/regularlly—with C/o(s) like
Mr. Wilder and Mr. C. Long, in C-building — 1, 2, & 3
said/Pods from late 2017 to about mid 2018,—
he might have been Called "Ward/Wroten," and he
is no longer at the prison/WRSP.

All the defendants have acted (and/or they Continue to act),
Under Color of State law at all times relevant to this Complaint
— and they are being proceeded against in their individual or
personal and/or "Official Capacity".

5.          Plaintiff also Sue(s) – with respect to some of
These Counts – as The virtual representative and party by representation
(and/or on behalf of) all WRSP and VDOC inmates who have been and/or will
be Subjected to Said Violations of their rights.

6.          Plaintiff also intends that each paragraph or
Subparagraph(s) of his Complaint (Plus all references) any attachments
exhibits or any amendments there to be incorporated by reference
into every-other (relevant) paragraph(s) or Subparagraph(s) or
any (needed) amendments there to.

## III. STATEMENT(S) OF UNDISPUTED "FACT(S)"

### A.- Targeted Harassments, Retaliations, Abuse/Assults, Discriminations, & Etc.

7.          Within the past several year(s), Plaintiff noticed some issues at the prison (and within the VDOC) which unlawfully deprived him of his rights plus privileges, and his efforts - sometimes collectively with the aid of other inmates - to have said issues resolved or addressed resulted in him/them being abused, harassed, threaten(ed), retaliated, discriminated, and conspired against.

8.          Plaintiff contends that the notoriously corupt WRSP does not recognize nor respect any inmates rights. It's deeply ingrained culture of corruption, racism, harassment and abuse, compels secrecy and engenders retaliatory impulses against those who challenge their (or the VDOC(s)) unlawful Practices or Actions (via, the power of the pen or otherwise), which is then circulated among staff at the prison in order for some amongst them - who might be interested in (exacting) sadistic or tourturous conduct(s) - to know which inmates to target or single out for said advers actions).

9.          That/said system is highly effective at WRSP because building supervisors - and other higher up(s), or sometime(s) counselors - circulate targeted inmates names to officials on both shifts and brakes in whatever pod/building said inmates are in so they could/can be assailed at all times. Plus, sometimes said wide spread conducts or practice(s) are executed by other inmates who are recruted by WR.S.P. staff to do their bidding in exchange for favors, e.g., they jump, stab, extort, fight, harass, (and etc), said targeted inmates, (and even spread false rumors about them).

10.          First: In/About early 2016, when plaintiff arrived at WRSP he had some difficalty obtaining informal complaint forms to pursue several constitutional (and other) violations at the prison

(and within the VDOC) that he - and other inmates - was being subjected to, e.g., inadequate recreation, not having access to a microwave or proper means to cook with, religious rights violations, (plus other perpetual violations at WRSP).

11.       Plaintiff submitted 'request forms' (in) to agents (1), (3), (4), (6), (7), and (15) about the problems — i.e., building supervisors not providing said form(s) upon request — but only agent (15) would sometimes respond and occasionally she would send one/two (1/2) complaint forms but by mid/late 2016 she stopped sending them and instead referred him to said (or the same) building supervisors, — who in turn would not respond to (or address) them.

12.        In addition, when plaintiff presented said complaints or issues - verbally - to those building supervisor(s) (e.g., agents (8), (11), and others) his request for informal complaint forms - from them - to allow him to document and pursue said issues was (mostly) responded to with statements like "That is a request for service." or "it does not affect you personelly" so we don't have to give you a complaint form. —— Although most of the informal complaints submitted by plaintiff - during said time period - on issues were bought from recent arrival inmate(s) to WRSP (or those who make a hustle out of selling said forms, — due to the(ir) limit(s)/restrictions at WRSP) staff(s) within said department kept circumventing them by not filing the majority of them (i.e., disappering them) in order to keep the number of complaints on issues at the prison low, and deprive him of his rights. (thus alot of times he doesn't name WRSP staff, -in their just- so his forms are filed).

13.        These circumvention practices at the prison was made possible by the inadequacy(s) of VDOC-O.P. 866.1 and WRSP orientation manual which sets "gate keeper(s)" for the access to the grievance process. —— When said 'gate keeper(s)' or officials were the same staff

that Plaintiff sought to submit complaints against, how can one expect them to willingly/knowingly provide him informal complaint forms (and/or file them). Plus most of them have close relationship(s) with each other, so they look-out for each others interest(s), (thus leading to Plaintiff being targeted)

14.        Due to this, Plaintiff submits that he began writing (out) some pamphlets, newsletters, or bulletin(s) which layed-out said issues at the prison and set out (a) format on how to challenge or pursue them through the VDOC grievance process, (so they can get some changes) — and for this WRSP officials (who were mostly in collusion to keep the amount of complaints or grievances down/low at the prison — and otherwise) retaliated against him.

15.        I.E., On one of these occasions that Plaintiff presented said issues to agent (7), and (11) who were in the pod - B1- together (i.e., it was in (about) late 2016 and the prison was on a annual/quarterly lock-down, and because officers weren't available — or probably helping shake-down another pod — both of them was in the pod helping to serve trays/meals at lunch and dinner, so during tray pick up(s) Plaintiff would engage them about said issue(s)) and she responded that if Plaintiff kept bringing/submitting complaints he would end up on a WRSP hit (or targeting and retaliation) list, Plaintiff also over-heard agent (7) tell(ing) agent (11) — while they were walking off from his cell— "find someone to slap him with a charge, maybe that will make him think twice about all his complaining." (note: although several issues was presented, of primary concern to Plaintiff was the fact that he was being deny(ed) access to legal means by WRSP staff, which was/had adversely affected some of his litigation efforts at the time, i.e., two separate state civil action(s) plus appeal(s), — see below for more facts—). Plaintiff asked agent (11) for an informal complaint form so he could pursue the issue(s) but he was told none would be provided because he was requesting for a service, Plaintiff preserved the issue in other way(s)

6

16.    _Second:_ On/about March 24, 2017 when plaintiff and neely, ~~there~~ plus other inmates, were in the pod (B-1) waiting to exit for religious service(s), They shook hand(s) and agent (20) - who was in the control booth stated "The next time I see yall touch each other am going to write you up," when plaintiff asked what he ment by that agent (20) states "Yall have been told wallens ridge does not allow any touching."

17.    After this exchange plaintiff approached (some super-visors and agent (11) - who's office was on the way out of the building - and presented the issue/exchange to him, Plus also asked for a informal complaint form so he could write the matter up, but agent (11) stated that the incident didn't affect plaintiff personally so a complaint wouldn't be given, and he said that he would talk to agent (20) for him — The next day on march 25, 2017 agent (20) filed a false charge of tempering with security materials, devices, or equipment against plaintiff, Upon information and belief, Plaintiff submits that said agent informed agent (20) of his verbal complaint(s) and had him take adverse action against plaintiff.

18.    On the date in Question - 3/25/2017, - while plaintiff was standing near the stairs (and waiting for one of the showers to come open) he bent down/over to get his shower stuff/roll (i.e., soap, cloths, towel, shampoo, deodorant, and etc.) but his J.P.S-player/tablet (which was in his top shirt poket) fell-out and when he went to recover it he inadvertantly let some of his shower items - that was in his hand(s) - go, and some ended up rolling under the stairs, (Plus some went over the pod's red line), while plaintiff was recovering said items agent (20) who was in the controle booth - and had been looking at him the hole time - yelled at him to step out of the pod, (i.e., into the vestibule).

19.    While there, agent (20) asked plaintiff what he was doing

under the stairs, and plaintiff related the above occurance to him, agent (20) then responded "So you went over the red-line and opened a tray slot?", to this plaintiff said "no" - he only reached over to get his stuff which had rolled over there, agent (20) then directed him to return to his cell, (an he also said that plaintiff's recreation was being taken till he decides otherwise). — The next day, said charge was executed on plaintiff.

20.        When Plaintiff was confined to his cell the rest of that day after said incident (plus he was prevented from coming out of his cell all that weekend - and more) Plaintiff kept asking officials why he was being deprived of in and out-door(s) rec., and all of them stated that he needed to talk to agent (20), and on march 26, 2017 - after said charge was served - he stoped agent (20) during his security check in the pod and asked why he had charged him and agent (20) stated "ya Stollard told me you wanted to write me up for telling you yall cannot shake hands."

21.        That week, Plaintiff approched agent (11) about the issue and told him that agent (20) had issued a false charge against him because he had asked for a informal complaint form to write up the incident that took place on 3/24/2017, Plaintiff then asked for another complaint form to write up the fact that agent (20) retaliated against him — with said charge and summarly plus punitively deprived him of in and outdoors rec., for days — (note: on 3/26/2017, when they talked agent (20) told plaintiff if he didnt want another charge he better not come out of his cell, when-ever he is working, till he accepts the penalty offer for said charge, or its hearing).— Agent (11) responded that "per WRSP practice and VDOC policy, since you got charged, you will have to bring these issues up at the hearing, however, when plaintiff asked agent (14) about it —

8.

prior to and at said hearing of the case - he said 'because there was no
Founded grievance to support plaintiffs' contentions, he couldn't present
that defense. (Note: Plaintiff still preserved said issue(s)).

22.        For the case of WRSP-2017-0459, Plaintiff was deprived
of due process and prevented from taking advantage of procedural
issues in the case, i.e.:

   a). Plaintiff was issued said Fabricated Institutional Disciplinary
      charge and deprived of evidence in the case because
      agent(14) claimed he didn't receive his 2-submitted request
      For documentary evidence applications (i.e., Plaintiff sought
      Proof that he had not been appraised of the VDOC(s)
      disciplinary policy - O.P.861.1-before being proceeded against
      Under it; Plus a review of the video footage for said event).
   b). Plaintiff being proceeded against under a VDOC policy he
      never received a notice of, (O.P.861.1) See below at #66c;
   c). Agent(14) "Found" Plaintiff "Guilty" of said charge based
      on no evidence, - Plus while knowing about plaintiffs'
      contention(s) of being targeted and retaliated against by
      said agent(s).(nor would he call one of plaintffs' witness to the hearing).
Plaintiff submit(s) that agent(14)'s action(s) of not allowing him to present
(or take advantage of) said issues allowed him to Find plaintiff guilty
in said case, Thus violating his rights, (Plus, penalizing him $15.00).

23.        The guilty decision - of said fabricated charge - was
Approved by agent(7) on april 17, 2017 after the institutional review,
while she knew - and a part - of said violations, (Plus the targeting and
retaliations that was going on, - which she was apart of).

24.        Plaintiffs' level I Appeal was Denied by agent(1)
on/about May 10/12, 2017 despite the above violations being presented

to him. Plus his level II appeal was denied without any review on
june 16, 2017 (and no reply was provided to his letter of complaint about
several WRSP officials conspiring to target plus retaliate on/against
him) — In addition, Plaintiff also contended that the VDOC policy —
O.P. 861.1 — which deprives a inmate of an advisor, witnesses, and
documentary evidence if they fail to respond or indicate a preference
(while the DOR is being served) clearly violated due process because
silence shouldn't imply consent.

25.        Third: Plaintiff was taken up for a annual review in
early 2017, and upon it's conclusion he noticed that:

   a). He had been unfavorably alloted some points — due to an escape
     charge — for his security level review (points) without any
     justification — and in violation of VDOC policy O.P. 830.2; plus
   b). He was not given half the points (i.e., 20/40) that VDOC
     classification policy — O.P. 830.3 — allows him to have for his
     GCA level review if he meets some requirement(s) (e.g.,
     applying for a job and/or programs (re-entry), that annual
     cycle, — which plaintiff did do).

because of those issue(s) plaintiff scored a GCA level 3 so he pointed
them out to agent (17), plus provided proof to support his contention(s),
and stated that he had earned said points which would require that
his GCA level/points be '2' and thus changing his release date from
prison to one around mid 2020(s) (and not one in the late 2020(s) — or
early 2030(s) — for a GCA level 3), but agent (17) responded that that's
how he was instructed to conduct "his" annual review.

26.        When Plaintiff asked agent (17) who had instructed him,
he responded that it was by agents (3),(4),(6),(7), and (11). So plaintiff
asked to speak to agent (11) before the completion of the review period

and a few days after that exchange plaintiff was called into agent (11) office - while he was returning from lunch, - Upon plaintiff presenting the above position(s)/issue(s) to him (Plus the fact that without a GCA level 1/2, his transfer recommendation will be denied, per VDOC Policy), agent - (11) responded that his hands were tied on the matter because they had been instructed by agents (3), (6), and (7) to conduct (his) annual review in that manner. Then he also stated "you see if you hadn't been complaining about all these stupid shit I would go to bat for you on this but I'm tired of your shit so youer on your own," and with this the meeting was over.

27.                    As a result of said unwarrented classification(s) by said WRSP officials, (note: agent (6) approved it on 3-3-2017), when plaintiffs transfer recommendation was sent to C.C.S, in richmond, VA, it was denied because he had not scored a GCA level 1/2. — So plaintiff grieved/appealed the issue on april 27, 2017, where he also contended that said agents had intentionally screwed up his annual review in order to retaliate against him for several complaints he had submitted (in) about his rights being violated at the prison, (Re: preserved at — WRSP-17-REG 0015S, in VDOC grievance. Procedure, (CorisSnap'), Plus other submissions.

28.                    In early May 2017, Plaintiff was called to agent (11) office under the guise of talking about the grievance regarding his annual review - which was improperly conducted - but upon getting to his office, Plaintiff was surrounded by agent (9), (11), (17) & several of their cronies (i.e., staff and/or supervisors), and he displayed a folder with a stake of complaints and request forms - of his - that had been submitted - to be filed - for months, which were never processed (or which were circumvented and disappeared) and stated "ofori, I'm tired of your shit, if you don't withdraw this grievance and

11.

stop sending all these forms in, you are going to get dealt with." — (Note:
For months plaintiff believed that WRSP officials had been toying
with his mail, and this event confirmed it. — Also, Plaintiff submits
that officials in the attorney generals office (and VDOC head Quarters)
had instructed high ranking officials at the prison to monitor his
mailing(s) — i.e., maintaining a copy of all his submission(s) — due to his
litigation efforts within the VDOC. And this was being spearheaded by
agent (7), and/or her title/possition — IPM (institutional Programs Manager).

29.          When plaintiff declined said advance, agent (11) instructed
agent (17) to reclassify plaintiff in an unfavorable manner and keep him/it
that way as long as he was in his building. Thus, soon after the exchange
agent (17) joined in on the retaliation by conducting a review on May 3/5 -
2017 where although he gave plaintiff the points for Re-entry programs,
no points was again given for his attempts to get a job/work at the
prison, (Plus, he was deprived of points for a charge — see above at #16-24 — he
didn't get in his prior/current review period). So Plaintiff was subjected
to a GCA level-3 and agent (17) classified him as a security level-S Simply
to disadvantage him, (note: although plaintiffs transfer recommendation had
been denied if the need came up — like bed space being needed due to a
mass transfer from a lower, level — he could have still been transfered
                        security
had agent (17) not reclassified his security level back to S. — Plus, VDOC
custom(s) still allowed inmates to be transfered even if they incur al/some
charges after their annual review). A request for an application to file on
the issue(s) was met with a claim from both agent (11) and (17) that he was
requesting for a service so no complaint or grievance forms can be
provided, according to WRSP customs. (this took place in early, may 2017).
                                                        or mid

30.          The same thing took place in plaintiffs 2018 annual
review which was conducted by agent (17) — as was instructed (Prior) by.

agent (11) — although plaintiff was no longer in a pod/building he had a responsibility for/of. —— Note: Although plaintiff was not provided with a informal complaint/grievance to pursue said issues — by agent (11) & (17) he was able to present and preserve the issue in said (or the above, plus other) grievance appeal(s) and/or letter(s) of appeal.

31.        Fourth: Around early 2017 plaintiff had an exchange with agent (12) — who was in the pod (B-1) delivering some law library or legal materials — where he made some of his regular inquiry(s), e.g., why couldn't he Shepardize any case laws or obtain a case finder on word(s)/phrase(s); why couldn't he access any of the law books (of significance) from his office or department; why it takes so long to confer/communicate with the institutional attorney; why he couldn't access the law library in person, i.e., physically; and etc — Note: the deprivation of said legal means and access was clearly a violation of VDOC policy plus the law.

32.        Agent (12) response was "better slow down around here with those kinds of talk of-or, you know young; Stallard; and some others already got you on one of these lists they got going around here." Although plaintiff was thrown aback by this he responded that all he was trying to do was properly litigate several issues he had pending in his criminal cases and some proceedings he had instituted against the VDOC and Sussex II state prison.

33.        At this, agent (12) informed him that his hands where tied as to the materials he could make availabe to inmates due to some limitations put into place by agents (4)(3),(4)(6),(7) and (via., advanced by) the attorney generals office and that all he does is collect the list for inmates who want to see the institutional attorney then forwards them to agent (7) to handle the schedule(ing) and/or appointment(s).

34.        Plaintiff submits that he was inclined to believe agent-
    —in part—
(12)'s statement(s), because in (about) late july 2016 — while the pod (B-1) was

13.

on lockdown (For several weeks) For a big Fight that took place in the
pod at ~~night~~ afternoon/evening, rec., on july 17, 2016 — he Stoped agent (7), who was in
the pod Conducting her rounds (along with other administrators) and
asked why he was having issues with accessing legal means at the prison,
i.e.:

A). Upon getting to WRSP — in march 2016 - Plaintiff put in to
Confer with the institutional attorney because a court deadline
to File an appeal to the VA, Supreme Court was Fast approching,
and due to some circumvention customs/actions of officials
at STISP he was unable to work on Said appeal For month(s)
(i.e., them not allowing him to get needed legal materials in
Sep., eather from The Law Library and/or his personal property
storage; not letting him Confer/communicate with that
prison's attorney). — Plus Plaintiff's requests For some legal
materials From the WRSP Law Library to aid his cause(s) was
inadequate (i.e., his requests For state petition For appeal Form(s)
(and others), case law(s), annotated/sheperdized authorities, word/-
phrase searches, legal how to manuals/books, and etc, were not
being provided). Thus, due to all of the above issues, Plaintiff was
unable to present an appeal application to Said court, (so
his cause's was deemed abandoned later on). — And —
B). Plaintiff had Sent a complaint / tort claim(s) to the Sussex
county circuit court — a Few months earlyer — with a
informal pauperis application, but the clerk had wrote him
back to inform him that Said application had been denied,
so he would have to pay a $ 344.00 Filing Fee, —— An
amount of money that plaintiff didn't have at that time, So
he put in (again) to see the institutional attorney For some

help with said issue after WRSP Law Library had failed
to provid him with reQusted authority(s) on said issue.
But, agent (7) reply(ed) that "if you wasn't doing so much complaining about
stupid stuff, we would have let you seen him [i.e, the institutional attorney] by
now." (note: Prior to this issue being brought up plaintiff had contended that
it was unjust for him/the pod to be on lockdown — without any rec,/exercise
access to the phone/kiosk and etc, — however, the inmates who were the cause
of said lockdown were in seg., with access to said means and etc, — plus
the problems he was having with accessing the grievance process at the
prison,(and other issues)).

35.        After said exchange with agent (7) plaintiff moved on
to agents (1)(3)(4) and (6) — who came by the cell after her — and
presented the events/exchange (with agent (7)) to them and they replied in
agreement with her possition (note, Plaintiff asked agent(11) for an informal
complaint form to submit on the issue, — shortly thenafter — but he responded
that Plaintiff was asking for a service so none would be given. ——— In
addition, plaintiff again presented the problem(s) — inadeQuate access to legal
means at WRSP — to agents (7) and (11) (see above count-1 at #15 ), in late
2016 but she, also told him, that one of the prisons modus operandi was to
suppress inmates like him/Plaintiffs litigation efforts [against the
VDOC/them], so if plaintiff wanted to get off of WRSP or didn't want
to get hurt, he should abandon those/his efforts).

36.        "Initially," — Plaintiff submits that due to the above issues or
impediments (see above at #34A) his litigation efforts to file an appeal on
a final judgement order from the Circuit court of Fairfax County was
circumvented, i.e., on May 2, 2014 Plaintiff filed a original complaint
(Re: Ofori V. DOC, et al. — Case # CL-2014-6876) on the fact that: @
The VDOC was unlawfully imputing several obligations from a final or

15.

criminal judgment order (and an ancillary order) against him; and ② the unlawfulness of the VA., habeas corpus statute of limitation(s). — See below at #130, for a summary/detail of the 'Non-Frivolous litigation facts, that was presented in that action — (And after the defendants' filed a Demurrer, Plea in Bar, and motion to dismiss — and the conclusion of some other procedural issues in the case — The Court rendered a final order on jan 21, 2016 dismissing Plaintiff's Complaint/application.

37.    Per VA., Supreme Court Rule(s), Plaintiff had 90-day(s) from the entry of said final order to file his appeal, which should have been by (about) 3-21-2016, but due to the fact that Plaintiff was in seg., at SIISP when he was provided with said final order, he was unable to work on his appeal, i.e., SIISP wasn't allowing him to confer with (the institutional or other) attorney(s), obtain legal materials from the Law Library, nor letting him access all of his personal legal material(s) that was placed in personal property storge because Plaintiff was in seg., — which limited legal materials or items to a few inches — (Note: he never got said personal property back — despite several complaints, grievances, and requests (forms/submitted) because SIISP staff intentionally (or otherwise) lost/disposed of them, — and most of those legal materials would have (grotly) aided plaintiff's appeal/cause).

38.    Upon being transfered from SIISP to WRSP on/about 3-11-2016, Plaintiff assumed he would be finally able to work on his appeal, so he put in to confer with the institutional attorney at WRSP (plus, he sent him a letter letting him know what his issues was), and submitted some request(s) to the Law Library trying to obtain several legal materials to aid his cause(s), but when Plaintiff wasn't getting said materials fast enough (while he was still in seg., plus after, at WRSP), he sought and was provided some more time — to submit said appeal to the VA., Supreme Court — hoping eather the rest of his (legal) personal property would be found and

returned by SIISP and/or WRSP would provid him with said needed legal aid(s), however, said personal property was never found/returned, nor did WRSP allow him to see the institutional attorney (in 2016) or provide him with said legal forms and authorities requested. Thus the VA, Supreme Court ended up denying his appeal because he failed to submit/perfect an appeal in a timely manner, and/or they sent his case file back to the circuit court of Fairfax because they deemed that he had abandoned his appellate efforts, (by july 26, 2016). — Due to the fact that the above(s) took place because of the inadequate access to legal means at WRSP plaintiff asked agent(11) for a informal complaint to pursue the said issue, but he was told he was requesting for services so none would be provided, (around said time).

39.        Next — Plaintiff submits that due to said legal access impediments his litigation efforts in a case he started in early 2016 was circumvented (see above at #34B) i.e., On Feb 16, 2016 plaintiff sent said pleading(s) to the circuit court of Sussex County to be filed on several unlawful/tort(ures) conditions (facts/events) that he was subjected to while being housed at Sussex II/2 State Prison (SIISP), — see below at #131 for a summary/detail of the non-frivolous litigation facts that was presented in that action, — and upon the clerk receiving said submission(s) a letter and purported order was issued that (improperly) denied his informa pauperis pleading/application (under VA, Code §§ 8.01-691 and 692, (plus §17.1-606)) and he asked that plaintiff produce said filing fee (that he didn't have at the time) befor his complaint could go forward. — Note: a docket number of "CL-16" was issued for it (on/about may 16, 2016)

40.        From late may 2016 (till about later that year) Plaintiff kept submiting request forms to the law library asking for any Virginia authority(s) regarding said filing (fee) issue(s), plus an audience with the

institutional attorney Agent (12) responded that plaintiff was on the list to see said attorney, and Plaintiff was sent some case-laws/authorities (i.e., Layfield v. Indian Acres Club of Thornburg, Inc., 58 Va. Cir. 233 (Va. Cir. Ct.-2002); Burkholder v. McGraw, 63 Va. Cir 537 (2003); and non-annotated VA., Sup. Ct. Rule(s) Plus statute(s) regarding said issue(s) which implied that Plaintiff(s) application/complaint to the Sussex County, Circuit Court was Considered Filed - Per Virginia law - when it was received by the clerks' office. — During said (time) peroid, Plaintiff kept seeing the institutional attorney Conter with other inmates in his pod (or at the prison) so he kept complaining about the issue to said agents (see above at #34-35) to/with no avail, (and his submitted complaints (forms) on the matter were being disappeared, and circumvented or never being addressed/responded to).

41.      After several months of saving up some money, - on his inmate account - plaintiff was finally able to make/send the filing fee to the Clerk/court on/about jan 11, 2017, — and he requested that the defendants - in the case - be served with process because it was coming up on a year since he sent the complaint to the clerks' office (due to Va. code § 8.01-335(b)) — The case then proceeded on it's course until the attorney generals' office filed a motion to dismiss and a Special Plea on Feb 23,-2017 (in Re: ofori v. Comm. of VA, — Case No: CL 17-3), where it was claimed that his action was filed more then 18 months after he filed the notice of claim so his law-suit was time bared, (by VA. Code § 8.01-195.7, Plus other points), contrary to what the above 2-cases, ruling/authority(s) held.

42.      Particularly, it was alleged that plaintiffs' civil action complaint which was mailed and recieved by the clerks' office in march of 2016, and it was never returned to plaintiff for any reasons, wasn't (considered) filed/docketed - in the clerks' office - until jan 23, 2017 and thus statutorily time barred. — Dispite plaintiffs' motion in opposition, on

18.

March 15, 2017, The Circuit Court agreed with the defendant(s) and dismissed the action. All of this was due to said 'lack/denial of legal means at WRSP,' Thus their (i.e., said agent(s)) actions caused him to be denied access to the Court(s). When plaintiff asked agents(9) and (11) for a/some complaint form(s) to submit on said issues (around that time) he was told he was asking for a service so none would be provided.

43.            **Fifth:** The targeting-by WRSP officials - still continued because plaintiff kept complaining about issues at the prison. Plaintiff submits that he has several (severe) food allergies (i.e., carrots, onions, tomatos, shellfish, pumpkins, white potatos, green peas (& beans), and (soy) beans) and that food service officials always put food items he's not supposed to eat on his tray(s) (in an attempt to cause him harm).

44.            Upon information and belief agent (11) is related to agent (16), and she is the supper-visor for the kitchen at WRSP, thus plaintiff submits that said harmful actions from (mostly) her department - directed toward him - is being perpetrated to aid agent (11)'s retaliatory agenda against him, — that causes plaintiff to be deprived of food/meals (plus food allergy breakouts thats painful) on a regular basis.

45.            Plaintiffs' issues always takes place when-ever tray(s) are being served in the pod (and some times in the chow-hall). Most of the time food items he's not supposed to eat can be visibly seen on his tray, so officers serving the food will take it back to get fixed, (if they aren't agitated by the situation); on other occasions said food items are discretely disguised and mixed in with food (items) plaintiff can eat — in an attempt to poison him — and this has caused him alot of harm (since 2016) which most times officials refuse to call medical for him for (or sign off on his emergency grievances about said matter).——As a result of this, Plaintiff does not eat most of the tray(s) thats provided

to him which looks suspicious and tampered with - or contaminated-
and either goes without food, or when he can afford it, he survives
on commissary food items. (Plus, Plaintiff has resulted to buying 'benadryl'
from other inmates so he can have them for ~~an~~ allergy breakout events
when staff refuse to get him medical attention).

46.         On May 21, 2017, while dinner was being served by a floor
officer - in B1-pod - plaintiff pointed out to him that his tray had been contami-
nated with beans, carrots, and potatoes so he couldn't eat it (note: the main-
course "fried patty" also contained soy). Said officer took the tray back
and stated "you should have taken a bite so I can see your face blow-up,"
when plaintiff did not reply to his taunt he then turned to the controle
booth and told c/o/mr. B.K. Bowman what the problem was with plaintiffs
tray and then asked him if he wanted to call food-service to have a
correction tray sent over, but c/o bowman responded "tell ofori he will be
ok, just drink some water till tomorrow." — Plaintiff was not provided any
food to eat that meal, so the next time said officers worked his pod
Plaintiff asked why he was deprived of his tray/meal and they responded
(that) "why should we get you a tray when you like complaining about everything
we do?" (note: c/o bowman also claimed he did call food service for him, but
that they told him he could eat everything on that tray). Because the events
seemed targeted & due to the fact that said deprivation(s) had been going on for
some time, Plaintiff found a complaint and grievance -from other inmates-
and submitted it on the issue (Plus, contended that said officers, and other staff
had been depriving him of his food intentionally), but officials failed to
resolve the matter (Re: Preserved at; WRSP-17-REG-00204, at Grien, Proce,
or Corissnap').

47.         On another occasion in early 2017, Plaintiff began to
complain to agent (16) about the fact that his cholesterol levels (might)

beting) up/high (unhealthily), due to her subjecting him to a perpetual diet because all her kitchen or department was providing (for the main-course of a meal) over 88% of the time -in substitution(s)- for his allergy tray or diet was egg(s) (or boiled eggs). — I.E, 3-boiled eggs was being provided for lunch and dinner - about 5 to 6 days out of a week - and when you factor in the days that eggs are (also) served for breakfast (which is about 4-days), this makes a recipe for disaster (and/or subjects plaintiff to a inadequate diet).

48.        In response, the kitchen/agent (16) began to send plaintiff beans on his tray(s) again - about once a day - and when he demanded that the issue be addressed on may 5, 2017, agent (21) came to plaintiffs cell and said (that) "both stallards got you on their list [i.e, the target(ing) or retaliatory list(s)], so either you take the beans tray or you don't eat today, and if we hear about this shit again you are going to the hole." Plaintiff responded that he would take the tray (because he was going to give it to his cellmate instead of letting it go to wast, — i.e., his cellmate would (sometimes) give him a soup (or two) for (some of) his tray(s)), however, agent (21) never provided him with a tray - that meal- and plaintiff believes that he did this/so in aid of agent (11) and (16)(s) agenda(s). An attempt to grieve the issue was unsuccessful. (Re: preserved at; WRSP-17-REG-00200, in 'grien, proc,/Corissnap') (also: WRSP-16-REG-00293).

49.        In the begining of 2017(s) Ramadan, Plaintiff had several inmates in the pod (B-1) with him join-in on complaining about agent (19) depriving them of in pod recreation, (or limiting it to 20/23 minutes), upon information and belief, said officials who those complaints was presented to (e.g., agent (11), and other building supervisors) didnt just circumvent them, (i.e, agent (11) told, him no informal complaint forms would be provided because the issue did not affect him personally) but

They also informed agent (19) of all the inmates submitions so he could silence them.

50.        So, On june 14, 2017 when the ramadan night tray(s) was being passed out and plaintiff pointed out to the officer serving the trays that there were several food items on his tray that he was allergic to (i.e., some beans, carots and potatos), said officer called up to the control booth to agent (19) and told him to order plaintiff another tray, and he responded that he would, however, no tray was ever provide to plaintiff that night (and when plaintiff asked agent (19) about it – while he was on the pod(s) floor for security rounds later on – he stated "write it up and see what happens, you still not getting that or your rec,") — In addition, Plaintiff and about 2-other inmates were deprived of their tray(s) (around said time peroid) by agent (19).

51.        Plaintiffs verbal complaint(s) to agent (11) about the event(s) was never resolved, nor would he give plaintiff any informal complaint forms — upon request — so he could pursue the matter because he claimed plaintiff was requesting for a service, (upon information and belief, agent (19) is related to agents (11) and (16), so those adverse actions or conduct(s) — and other(s) violation(s) unmentioned here — was to aid his and their retaliatory agenda. — Note: agent (19), who works the night shift, was also known to circumvent inmates'/Plaintiffs' mailing(s) — in B-building — on behalf of agents (7), (11), and other official(s).

52.        Due to the regular occurrence of the violation(s) with plaintiff(s) food/trays — while he was in B1 Pod — he asked some of the pod(s) inmate food-servers (several times) if they could start checking his tray(s) for any defects at the (big) food delivery carts — that the pods tray(s) are provided/wheeled in — so any issues can be addressed A.S.A.P. — Plaintiff was informed by said workers or inmates that it would

not matter because WRSP officials were coordinating their efforts to keep his trays "F-ed up." —— I.E., those inmates had attempted - on several occasions - to have officers call to have errors/issues with his tray(s) addressed when they were discovered at the cart, but said staff have stated that "let ofori complain about it ~~before we call in~~ another one for him," or they have even reported to him that they have observed some officers swiching his tray lid(s) with a regular or veg tray lid(s) (because they might have liked what was on his tray and wanted to keep it for themselves), and that on several occasions when plaintiffs replacement trays were delivered - at the ~~breezeway to~~ Vestibule to B-1,2,3 said/building- still not proper (or with items he can't eat on it), and they try to inform the officers in the controle booth to re-order a correct one, agent(11) has been known to step out of his office (which is in said location) to tell said officers not to call in for plaintiffs proper tray, then he orders/directs the inmate(s)/food-servers to deliver plaintiff still contaminated tray(s) to his cell as is.

53.       Plaintiff submits that he even tried to mitigate the issue by asking agents(8,9,11), - and other supervisors - to give him a food-server job so he could let staff in the kitchen known if his trays' not correct, (upon being sent from the pod to pick a tray up), however, in about late 2016 and early 2017, agent (11) - and agents (8),(9)-told him he did too much complaining about issue (at the prison), so they would not give him a job, - even though he qualified for it, and said supervisors/agents had given other inmates jobs who were'nt even 6-months charge ~~free~~, or otherwise qualified. —— Additionally, the practice of WRSP staff depriving plaintiff of (a) meal tray(s) was taking place, at least 8 to 12 meals out of a week, and whenever he did complain about said issues to agent(11) - and other building

Supervisors - he (or they) would fail to address the matter, and not provide him with a informal Complaint form - upon request - thus effectively preventing plaintiff from pursuing most of those issues, (because they claim he was requesting for a service). — However, Plaintiff has been able to obtain several affidavits from some inmates/food servers - over the years - who witnessed the above (and other) violations taking place

54.        Sixth; Prison officials owed Plaintiff a duty of care to keep track of his personal property while in their care and control. — On 11-29-2016, Plaintiffs beard trimmer(s) was confiscated and placed in storage, but due to the fact that he didn't have any other electronics for which he needed his rechargeable batteries and charger (for) they were also taken and placed in storage (issue was grieved in # WRSP-16-REG-00724).

55.        On 4-19-2017, Plaintiff bought and recieved a hand-held radio for which he needed his batteries and charger for so he asked some building supervisors and agent (11) if they could retrieve said items for him and they returned stating that personal property officials claimed that those items couldn't be located/found in storage. — I.E, agent (22) and (11) informed Plaintiff on/about 5-23-2019, that his property (the battery charger - which cost him about $26.00; and 8-rechargeable battery(s)-which cost him $36.00, in total) couldn't be located/retrieved from the property dept.,.

56.        Plaintiff then asked for an informal complaint to pursue, the issue, and agent (11) stated "you see all of your complaining is why I told them to toss your shit," when plaintiff responded that he didn't want any problems, agent (11) stated "good, now get out of my office because your shit is gone." — Plaintiff returned back to his pod and was able to find a informal complaint form from another inmate (that he paid 3-hunybunzs for) in order to submit it on the issue, — Plus, he also presented the fact that some staff at the prison

24.

*turpetedly*

had been, retaliating against him for several complaints he had been submitting on issues at the prison - (he preserved at: WRSP-17-TNF-01165 )in Griev, Proc., (Coristrap) and shortly after this -in about early June - Plaintiff was called into agent(11)'s office (with agent(9); (2)& other's present) where he was told to sign of on the complaint withdrawaling it or a shank would be planted on him or his cell to get him moved, Plaintiff considered his options and responded to agent(11) that since they just had agent(20) fabricate a charge against him, (plus other retaliatory actions he's been subjected to for about a year) it didnt matter what they did to him next.

57.    On June 12, 2017, Plaintiff submitted a regular grievance in on the issue - along with several other issues which he hadnt been able to pursue because supervisors wouldnt give him any complaint forms - but agent(15) returned it on 6-14-2017 claiming he had requested for services,
*-or named said agents-*
So reasoning that he might have added too much issues with his application, plaintiff resubmitted his grievance on 6-15-2017 which tried to stick with fact(s) around his charges and batteries but again it was returned due to said reason, so he appealed said issues to the regional ombudsman on 6-16-2017 (plus submitted a letter of complaint about said (and other) issues) but his application(s) were unsuccessful. —— Plaintiff contends that he was also 'RETALIATED' against by agent(15) useing the VDOC(s) OFfender(s) Grievance Procedure - O.P. 866.1, wher upon said grievances being submitted she refused to log them (upon intake) by (her) stating: "Request for service(s)," Therefore, that's unlawful.

58.    Seventh; said officials didnt relent in their adverse actions against Plaintiff for his complaints against issues — On May 11, 2017 Plaintiff was (again) called into agent(11)'s office to address some of his complaint(s) or submissions about his religious rights being violated, while being escorted (by a c/o who plaintiff had never seen) from his cell/Pod to the office,

25.

Said official Stated "you better play ball when we get in here or else I'm going to tell everyone in your pod that you are a child-molester." (note: even in prison some crimes-such as molesting a child-are frowned upon; and those found to be perpetrators are subjected to being brutally assaulted (sexually or otherwise) extorted; plus other degradation(s) and abuses from inmates and prison official(s).

59.        As a result of Said threat, when agent(11) demanded that plaintiff withdrawal his complaint (and he (would) ensure that no-one would bad mouth him or do anything to him) he responded that he wouldn't pursue the issue any further, but when (about) 2-Sunni services came and went with the Same violations Still taking place — and plaintiff believed Some of them was being done to him in retaliation too — he submitted a grievance on the issues (plus, he kept on submitting verbal complaints to agents (3),(4),(9) & (11) along with others, about said violations), but his application(s) were all circumvented — i.e., agent (15) claimed he was requesting for Services - (preserved at: WRSP-17-INF-00982, in (Griev. Proc./Corisnap), plus his letter of appeal and complaint was unsuccessful.

60.        Shortly after this (or the above event), there was rumors circulateing among the inmates in plaintiff's pod (B-1) that plaintiff was a child molester, and under threat(s) of being attacked by Several gang members if he didn't pay them to Stay in the pod plaintiff presented his court case file(s) - to them - in order to discredit the rumors that was being spread by WRSP/said Staff(s). — Then he approched agent(9) plus (11), and told them if they or their cronies didn't Stop trying to get him harmed by spreading Fals-hoods about him to the inmates in his pod he would write to Someone outside of the prison to look into them and the issues. (note: said agents wouldn't give plaintiff any informal complaint, forms, upon request, So he preserved the issues in letters of complaints - to the regional office - because he couldn't locate any in his pod)

26,

61.            _Eighth_: To aid their conspiracy with regard(s) to numerous
of targeted retaliatory actions/purposes, agent(9) and(11) had plaintiff
and his cellmate relocated - to a lockdown Pod - (From B1-pod to B6-pod), in about
mid 2017, and in an attempt to also prevent him from stoping at their
office - everytime the pod was let out - to complain about several issues,
(i.e., see those presented above) and due to this plaintiff was subjected to
conditions which were significantly more adverse then in his previous
pod, - i.e., it was a harder living environment, - e.g.:

a). The new pod had more fights over (access to) the Kiosk(s);
   telephone(s); shower(s); and etc, - For which the administration
   normally kept the pod (or tier) on lockdown for (an average
   of about - or more then - 5 days or a week, if not More);

b). Staff regularly limited pod rec., to about 30/40-minutes a
   day, Plus outside rec., was regularly canceled (especially on
   the weekends), although other pods could be seen/heard on
   the yard for their rec., on said days,

c). Staff would regularly target inmates on the prisons
   retaliation list - in the pod, e.g., Plaintiff - with unwarrented
   (cell)searches, fabricated charges, insults (racial and otherwise).
   Plus Plaintiff observed that agent(s)(9),(11), (and later on agent(10))
   had more control/influence over the officers who worked
   B-4,5,6 said of the building, so that's another reason why
   they had him moved their, - to make it easly for them to
   get him singled out/targeted. ⌒ and etc. ⌒

Thus, the below events (at #62-83) also took place because plaintiff was being
subjected to said Pod and/or conditions. (note: due to the fact that plaintiff
submitted complaints on this issue was being disappeared (by the grievance dept, or
agent (15) and other WRSP staff), he preserved it with letters of complaint to the

27

regional office, — Also, Plaintiff was initally told by agents (9) and (11) that they wouldn't give him any Complaint Forms – for this matter – because it didn't affect him personally, so he had to buy them from another inmate.

62.    **Ninth**: On Oct 21, 2017 (at about 10:40 p.m.) Plaintiff had an accident while getting down from the top bunk (as a result of there not being any step ladder) which resulted in him stepping on one side of his (pair of) ear buds and it caused some wire to be exposed, Plus when plaintiff was standing near the sink inspecting the damage(s) he inadvertantly dropped it into some water, later he retrieved the earbuds and cleaned them off, Plaintiff hanged them over the bottom vent (by putting some or half of the wire in the vents-hole(s)-so it could stay up there) to dry-out. Because mail had alredy been picked up for that day/night, Plaintiff couldn't send out a request form to the personal property dept, to ask that they come get or confiscate the earbuds that was damaged.

63.    The next morning, officers entered the pod to conduct a shake-down (of the pod), and plaintiffs cell was one of the first to be searched, and while officials were in the cell agent (26) took/pulled the earbuds out/off the vent and asked "who's are those"? so plaintiff claimed ownership and one of the other officers present (who normally works the yard) stated, commented or asked "your the guy who's allergic to everything huh?" and when Plaintiff didn't respond agent (26) stated "I heard he also likes writing everything up". They then completed the search and returned plaintiff and his cell-mate back to their cell.

64.    Moments later they came back to his cell with agent (9) and pulled plaintiff and his cell-mate back out of the cell and searched it again (while agent (9) was asking plaintiff a barrage of questions about his submissions of complaints regarding several issues, e.g. like "did you help your celly with that complaint about his player; where do you get your complaint forms from; (plus comments like 'we could tell some more rumors about you over-here'; and etc)."

Agent(9) told one of the clo's to issue plaintiff a charge prior to Them exiting the cell. After that an officer came to plaintiffs cell - a few hours later - and served him a possession of a contraband charge, (Re: in case # WRSP-2017-1315). ~~issued by agent(9)~~.

65.        Plaintiff approached agent(11) and asked for an informal complaint form to pursue the issue (i.e., agent(9) having agent(26) issue or fabricate a charge against him because of said complaints he had submitted in the past), — Plus, plaintiff informed him that no confiscation form was issued for his ear-buds (which costs about $27.00) so he wasn't able to have it sent out (to get fixed, replaced/otherwise), and that it's taking was not only in violation of due process, but that those agents did so in retaliation too.— Agent(11) responded that since a charge was issued he couldn't provid plaintiff with a complaint form for said issue (e.g., see above at #21).

66.        For said case, plaintiff was deprived of due process, and prevented from taking advantage of procedural issues in the case, i.e.;

a). Plaintiff was issued said fabricated Institutional Disciplinary charge that was indicated (in retaliation) then "AUTHORIZED" by agent(9) on 8-22-2017, — without any (independent/adequate) investigation, by an impartial official, (befor that action), in order to find out if plaintiff was actually in possession of a (item of) contraband, (Plus, he/agent(9) was a part of said retaliation).

b). Plaintiff was deprived of evidence by agent(14), who (falsely) claimed he didn't get the reporting officer response/questions) form that plaintiff sent him - along with other forms - in order to obtain answer(s)(e.g., what kind of wire was found; didn't agent(9) re-enter the cell with said item and conduct another search, while commenting about plaintiffs past complaints then told him - said clo - to issue plaintiff a charge; and etc)

c. Plaintiff contends that he shouldn't have been proceeded against (nor penalized) under a policy – O.P. 861.1 – that he wasn't apprised of prior to the charge being served/issued on him, i.e., he was never provided with a copy of the (new) policy (o.P.861.1 when it was passed out in late 2015 (note: c/o(s) who were passing them out never gave him a copy because they claimed that they ran out, and would have to come back with more, but this never took place) nor was he asked to sign any documents as was required of the other inmates who did get a/their copy. (also, a copy of o.p. 861.1, policy was served on plaintiff on 8-24-2017 – after he had already been subjected to its process several times, e.g., see above at #22b, plus his case or charge which was served on him on 8-22-2017).

d. Agent (14), "Found" Plaintiff "Guilty" of said charge base on no evidence (and by denying him exculpatory evidence) – plus while knowing about Plaintiff's contention(s) of being targeted and retaliated against by said agent(s), but denying/preventing him from presenting it in the case, (he never examined said item himself). Plaintiff submit(s) that agent (14) action(s) of not allowing him to present (or take advantage of) said issues allowed him to find plaintiff guilty in the case, in order to penalized him $5.00, thus violating his rights.

67.    The guilty decision – of said fabricated charge – was "Approved" by agent (5) on/8-30-2017 after the institutional review, while he knew of said violations, (plus the targeted retaliations that was going on against plaintiff). ⌒ An appeal – in the case – was "Denied" by agent (2) on or about Sept 18/21, 2017 despit the above violations being presented to him. (note: all issues/facts preserved under said case and some letters of complaint).

68.        Tenth: Plaintiff submits that in late 2017 he kept on complaining to agent (9) and (11) - during their rounds (in B6-pod) - that agents (18), (23) (24), and (30) were regularly cuting the pod's rec, short (i.e., only providing about 40-minutes of pod rec, a day, during their shift(s)), Plus, depriving the pod of outside/yard rec, and thus excrise mostly on the weekends that they work(ed). — And they were regularly lining the pod up during rec, to search the inmates and their property, where they have (or were) taken(ing) Hygeine and other items - like Food, plus law/legal and religious materials - from them but not issuing any confiscation form(s) from them or inmate(s), (to include Plaintiff).

69.        Upon asking agents (9), (11), —and later agent (10) too in 2018 — for informal complaint forms to pursue said issues their reply was that they would look into the matters befor providing any forms, however none was ever provided, plus upon information and belief they appraised said officers of his complaints about them/their actions—and had/help(ed) them target Plaintiff some more in order to compell him to stop his complaints.

70.        E.G., said officials retaliated against plaintiff by trying to make his living situations with his cellmates difficult, via, targeting them both and blaming it on plaintiff, i.e., in about mid, nov, 2017 agent (18) and (23) — B6-14; conducted a targeted search of plaintiff's cell (after he had presented some complaints about them a few days earlyer to agent(s) (9) and (11)) where said officers took his weight-bag and other items (like empty chip bags, craker box(s), lotion bottles, and etc) but no contraband was found, however said agents unlawfully and summarily punished plaintiff and his cellmate (Mr. Pisacane) by coming to their door - later on- and threatening them with being physically assulted/harmed if they come out of their cell for rec, while their shift/brake was working on (i.e., they/he said if y'all come out of the cell today, I'll punch you in the face..). — Plus, Mr. Pisacane was issued a

31.

Fabricated charge by agent (18), and both of those agents told him "All of
this is Courtesy of Mr. Ofori and his complaints on us." Thus, they were
placed on cell-restriction - for days - and not allowed to come out for a
shower, nor pod/outdoor(s) rec., (and their action(s) was aided/assisted by
agents (24) and (30), who were in the controle booth and wouldn't open
plaintiff cell-door for rec.(s)). In addition, officers on the night shift would
not open plaintiffs cell-door for night rec, because they claimed they were
instructed by said agent(s) -i.e., the c/o(s) and supervisors - that him and his
cellmate were on cell restriction.

71.         On nov 27, 2017, while agent (11) was conducting his rounds
in B.6-pod — with agent (18) in tow — Plaintiff submitted a complaint to him
about (said agents (18), (23), (24), (30), and others (again) retaliating against him
with the above - plus other - action(s), agent (11) in-turn said he would look into
the matter, but that no complaint form's would be provided to plaintiff.
Then he walked off, only to come right back - minutes later - and told
plaintiff and his cellmate, to step out of their cell so they could search
it. —— After said extensive search of the cell took place for more then an
hour (in the morning), and no items of contraband was found, some-time after
— between 10:50 to 11:00 a.m., — agent (18) came to plaintiffs cell-door and
said "y'all are on cell restriction for a few days, if y'all come out am going
to put a shank on y'all and have you sent to the hole."

72.         Being in fear, Plaintiff and his cellmate didn't come out of the
cell, however, later that day (at about 1:43 p.m., - Nov 27, 2017) when Mr. pisacane
was taken into (the) B6-pod(s) office for a disciplinary hearing — on the
afor-mentioned false charge — he informed the IHO (agent (13/14)) on the
record(ing) of the charge of the fact that said agents had put him and
plaintiff on cell restriction for said charge and in retaliation for complaints
being submitted in on them (and other issues), but agent (13/14) brushed the

32.

contention(s) off and attempted to prevent them/it from entering the record. — Agents (9) and (11) finally just had Mr. Pisacane moved to another pod-shortly thenafter - in an attempt to silence him/them. (note: the cell restriction was ongoing from when he/Mr. Pisacane was issued said fabricated charge till sometime after 11-27-2017). Plaintiff submits that he did find a informal complaint form to submit on (some of) the above events but it was circumvented/disappeared, so he took other steps to preserve the matter, (i.e., letters of complaint to the regional office, and obtaining a declaration from Mr. Pisacane).

73.    Eleventh: In continuing with their adverse actions, on dec 21, 2017, agents (9) and (11) had agent (23) extract plaintiff out of his cell under the guise that said agents wanted to see him in their office about some of his complaints - see above(s) - and while plaintiff was on the other side of the building she targeted his cell with a search, where no contraband(s) was uncovered. In deed, there was no contraband to in the cell

74.    But, while conducting the search agent (23) told Mr. Stephens -who was plaintiffs' cellmate, and present, - " I see you don't have that much paperwork like your cellmate so don't get like him while your in here," Mr. Stephens asked what she ment and informed her that he just got to the prison the day before. Agent (23) told him that plaintiff (and his associates) were problem prisoners who were in "deep shit/trouble" with the prisons administration for getting others (inmates) to complain - with him/them - about issues at the prison, and that if Mr. Stephens knew what was good for him he would tell her what (or everything) plaintiff was up to. When Mr. Stephens declined to say anything (and pointed out again that he just got to the prison), agent (23) threatened him with being issued a charge, getting sent to the hole, and being beaten up.

75.    After Plaintiff returned to the cell (that morning),

Mr. Stephens told him of the exchange he had with agent (23), so - later that morning - while agent (9) and (11) were conducting their rounds in the pod, Plaintiff stoped them and asked for an informal complaint form to submit against agent (23) for targeting his cell with a search in retaliation, and both of them told him to let the issue go or he would be subjected to a charge. Plaintiff responded that she had also bad-mouthed him to his cell-mate so the issue was personal now, that's when they both replied that he didn't have to worry about getting or filing a complaint because he had a charge coming to him, and per VDOC/WRSP policy and practice(s) he had to present the issue at his hearing. ——— Plaintiff was later issued a false charge (Re: Case # WRSP-2017-1759) by agent (23) who accused him of being in possession of (a) contraband (falsly) - which was "Authorized" by agent (9), while he knew (and was a part) of said ongoing retaliations, and a $5.00 penalty offer, was advanced for it. Upon attending the hearing for said (false) charge, Plaintiff presented his retaliation defense and some procedural/technical issues in the case, and the IHO elected to dismiss it/the case instead of addressing the retaliation contention (note: plaintiff also preserved the issue by obtaining a declaration from Mr. Stephens, and sending (some) letter's of complaint(s) to the regional office about said events, but they were not addressed).

76.         Twelfth: In late 2017, after months of complaints being submitted against issues and agents (9), (11), (18), (23), (24), and (30) - see above(s) - on dec 30, 2017 plaintiff was again retaliated against, i.e., on said date at about 3:30, p.m., while B6-pod was walking to the dinning hall, a caucasion (and/or white-supremacies) inmate - who was being housed in cell-605 of B6-pod - approached several (black) inmates and told them that agent (30) - and some of the others above - had recently told him that "Mr. Ofori, White, Whitlock, and Roberts were all child molesters," so action should be taken to get them out of the pod.

77.            At this point, several inmates who were armed to the teeth with shanks and other weapons demanded any form of payment —monetary or otherwise—from said inmates and/or plaintiff (in order for them to be left alone) or proof that the allegation(s) were false. —— After a meeting (was held) where documents was produced to discredit said false claims (which was put out there by said agents in order to have plaintiff— and the other inmates who normally joined him in complaining about said issues and/or agents in the pod—harmed), hostilities and confrontations died down, (plus it was explained to those inmates that said agents was targeting them or plaintiff in retaliation for complaints submitted against them, thus why they used the (known) racist inmate to spread rumors).

78.            Because of the agents envolved in this exchange/event, plaintiff elected to buy an informal complaint form from another inmate and submitted it on the issue but it was disappeared or circumvented, so plaintiff elected to preserve the issue by obtaining a declaration from some of the other inmates envolved in the event plus sending a letter of complaint about it to the regional office, but they were never addressed, (nor his complaint letters to VDOC cheif Insp, Gen.).

79.            Thirteenth: The retaliation didn't end there, i.e., On Feb 12, 2018 (at about 2:38/42 p.m.) while agent (3) was conducting his rounds with agents (10),(19),(30), and other officials around (or in B6-pod), plaintiff — plus other inmates— stopped him and began to present complaints about issues (e.g., rec, being regularly deprived, legal access/means being denied, religious rights violations, being regularly subjected to unsafe conditions and/or environment, and etc). —— When plaintiff was done presenting his verbal complaints, agent (3) asked "have you brought these problems to your building supervisors?, and plaintiff informed him of the above events or issues he had been having with some of them, (see #10 −15,58−61, and

35.

68 - 78). Then agent (3) asked Plaintiff to send him a request form presenting his/said issues, and plaintiff pointed out to him that agent (7), (11), (19), and other officials had been circumventing said mailing(s), (i.e., Plaintiff pointed to/narrated the events that took place with agent (5) at # 83).

80.          Agent (3), then walked off to the cell next-door (B6-15), and while there plaintiff saw him lean into agent (11)'s ear (who had just walked up) and whisper something to him— while pointing at plaintiffs (plus 3 other) cells,— and he inturn approached said cells (Plaintiffs first) with agents (10), (30), plus other(s) and asked why he had told agent (3) that his verbal complaints to him/them was always responded to with threats and other intimidation(s) tactics to prevent the issue from being processed and/or addressed, Plaintiff responded -defensively- that he wasn't telling any lies.

81.          Agent (11) then had plaintiffs cell door opened and some of them (the officials) stepped into the cell and agent (11) said "if you don't want to get fucked up you better not bring this stupid ass shit up again," and being in fear (for his life) because some of the officials present had a history of assulting inmates Plaintiff just kept quiet while those threat(s) were being made and when they were done they left his cell and went to the other(s) to do the same thing.

82.          Although plaintiff was in fear he did obtain an informal complaint form from one of his comrads and submitted it on the issue but it was circumvented, so he elected to preserve the issue by obtaining a declaration from some of the other inmates who were envolved plus he sent a letter of complaint about said event to the regional office but there was never any reply.

83.          In addition, after months of submitting some informal complaints and request forms in on some of the issues presented

above (see #58-78), and said applications were being disappeared, on dec 27, -
2017, (at about 10:42 a.m.), agent (5) came through B6-pod and had Mr. Whitlock's
cell-door opened, while steping through the door-way he tossed some documents
in the cell and stated "you and your buddies should stop sending these in before
you end up getting hurt." (note: it was B6-pod cell-610) — when agent (5) got
—about the issues below at #135 to 157-e
to plaintiff's cell he (tried to) ask, why there was issues with some of his
complaint issues and other forms not getting filed at the prison, and agent (6)
told him to ask Mr. Whitlock when they came out for rec., later on. Upon
doing so Mr. Whitlock produced a pile of paper(s) and informed him of the
above event, and when plaintiff looked through them he discovered that it was all
the original documents of requests, complaints, and/or grievances forms(s), that
he and Mr. White, Dammones, pisacane, roberts, plus others(s) had submitted in
months prior, but they had been disappeared by WRSP staff (note: there was
no way Mr. Whitlock could have gotten them if prison staff didn't give them
to him), and none of them had ever been filed. Most of the submissions
was about the above events, plus e.g.;

  a). On 8-18-2017, officers in the controle booth didn't open
   plaintiff's cell-door to allow him to attend Sunni or islamic
   services, (but other inmates were allowed to exit the pod for
   said program), - complaint -, (B6-pod).

  b). On Sept 8, 2017, agent (3),(4), and other officials searched
   all of the inmates who were attending islamic programs
   that day - in a targeted manner - so plaintiff voiced a
   verbal complaint about the fact that the hole event seemed
   to be a form of intimidation against the practitioner(s)
   of that faith, and said agents told plaintiff to "shut-up
   or we will shut you up," (along with other things) - complaint -.

  c). On Sept 12, 2017, in B6-pod, plaintiff told agent (3) - during

his rounds - That several staff were subjecting him to targeted retaliation in the pod, (to include some of them calling him the "N-Word" several times, i.e., agents (18),(24), and (30)) plus agent(3) told him to "Suck it up," befor he walked of from his cell.- Compl.-

d). On Sept 23, 2017, while in B6-pod, officials lined the pod up and searched all the inmates plus took plaintiffs legal or law book (and a islamic book), without issuing plaintiff any confiscation form(s); while claiming WRSP policy does not allow him to have them in the pod; nor were they returned.- Compl.,-

e). On Nov 1, 2017, plaintiff was not allowed to attend Sunni or islamic Services due to staff not letting him out of his cell For it when it was called.- Compl.,-

F). On Nov 14, 2017, while agent(2) and (3) were conducting their rounds in B6-pod plaintiff presented several verbal complaints in about some of the above violations and they (or agent(2)) told him to send him a request with the details.- Request(s).-

g). On Nov 21/22, 2017 while agent(4) was conducting rounds in B6-pod, plaintiff stoped him and presented some of his complaints about some of the above violations and agent(4) stated "don't worry afoi, I will be sending somebody at you to see about all of this real soon," - Compl., Form -.

h). On Dec 10, 2017, B6-pod was put on lock-down due to a one on one fight between two inmates who were taken to seg, but the pod was kept locked-down till 12-14-2017. - Compl., Form -.

Plaintiff submits that ther was other applications of his present in the pile but he presents the above to make a point. - Due to the issue at hand plaintiff preserved the problem(s) with 2 letters of complaint.

- See #75 -
78

94

84.    _Four-teenth:_ In relation to the above Count - 4 (#31-42) Plaintiff was finally able to seek some legal counsel from the institu., attorney (Mr. I. Thadieus Harris, III) on May 21, 2017, but by that time he had received (all) negative or unfavorable results from his -unaided- pursuin" of the above and other litigation matter(s) because he "lacked the code or law, (plus the lack of adequate legal access/means at the prison, and the circumvention actions of agent[s](1)(3)(4)(7)(11)(12) and others).

85.    At said meeting with Mr. Harris, Plaintiff asked why it took about a year for him to obtain a face to face with him, and Mr. Harris responded that he comes to the prison on the regular, but that he had no controle over the inmates he meets up with because agent(7) and/or (12) composes the list(s) of the inmates he has to see when-ever he is at the prison. — Upon information and belief Plaintiff submits that he was only able to confer with Mr. Harris because agent(7) was no longer working at WRSP, (and/or she was no longer the Institutional Program Manager, or she didn't have any authority at the prison any more by or around May 21, 2017), plus all of it was being done in retaliation.

86.    When plaintiff asked Mr. Harris why he did not reply to any of the letters he had sent asking for help with:

    a). Maintaining/pursuing the actions advanced above at #39 to - 42. — Plus, it's appeal to the Supreme Court of VA., Record No. 170888.

    b). Pursuing an appeal in _Terry k. Ofori - V - Comm., of VA_, (Case No. 6876), from the Circuit Court of Fairfax Co., to the Supreme Court of VA, — (see above at #31-38, and below at #130 for the "Non-Frivolous" litigation fact(s) that was at issue).

    c). -And- he was being frustrated/impeaded from

pursuing a 'motion to Vacate' in Case No. FF-1999-96842, 96843 and K98059, regarding the fact that the charging instrument(s) and/or judgment orders were Void.—(See below at #130 & 131F for the details of non-Frivolous litigation facts) of said case(s).— Plus, preventing him from Filing a second or late Writ of habeas Corpus per the ruling(s) in the U.S, Supreme Court Case 'Martinez V. - Rayon, (2012). (To include other issues, see #134).

Mr. Harris responded that he didn't get any letters from plaintiff, —Upon information and belief this was due to prison officials toying with his mailing(s) (See above at #28 and 50), i.e., not mailing them out of the prison.

87.        An attempt to obtain more help from Mr. Harris by resubmitting to see him again on/about May 21/22, 2017 - and sending him some letters of inquiry - didn't bear any results till nov 17, 2017 (i.e., another meeting with him) and because he didn't get all of the info or help from him - for some of the issues/cases presented above at #86 - Plaintiff again submitted another request form in to speak with the institutional attorney on nov. 28, 2017, but for months he didn't see him, (nor was his additional letters ever responded to, as usual) although plaintiff did see him Confering with other inmates a few times.

88.        On Feb 28, 2018, While agent (3) and (4) were coming through the pod (B-6) at about 1:48 p.m, Plaintiff stoped them to log a verbal complaint about how the lenth of time it take(s) to obtain an audence with the institutional attorney at the prison being Unreasonable and agent (3) reply(ed) "your on the ban list that MS. Young put you on till you start acting right ofori," Plaintiff responded that he had seen Mr. Harris a few months ago but he still needed some more help to compleat his legal applications he was still working on, and agent (3) Stated "ofori as long as any of US is here, you will never be allowed to see the lawyer.

40.

— True to his word, Plaintiff was not allowed to see the institutional attorney for any help till after both agent (3) and (4) were no longer officials at WRSP. (i.e., agent (4) was last at the prison in about early 2021), so sometime in mid-may/July-2021, dispite plaintiff's relentles requests asking to see one over the years and even seeing other inmates at the prison or in his pod who submit(ed) their requests after him, (note: some of these inmates plaintiff had helped them submit their request form(s) in to see the prisons lawyer after his was already in for months but they got to see one and he was denied said access). Plus this prevented plaintiff from properly litigating his (above-and even the present) causes

— Plaintiff did ask agents (8)(9)(10) and (11)-over the time period(s)- for an informal complaint form to pursue the issue(s), but he was always told none would be provided because he was 'Requesting for services,' and because plaintiff has always been persistent with this issue he was able to preserve the matter via letter(s) of complaint and even complaints or failed grievances that agent (15) also deemed to be a request for services, thus re-inforcing said agents claims over the years, (e.g., see: WRSP-20-INF-01949, and other(s) preserved in griev., proc./Corissnap').

89.          Fifteenth: In early 2017 Plaintiffs bowl and Coffee Mug, (or cup) was confiscated by officials who claimed said items were no longer allowed at WRSP so plaintiff commenced a grievance on the matter (Re: preserved at; WRSP-17-REG-00052, in Griev., Proc./Corissnap), and at its conclusion officials claimed that replacement item(s)- bowls and mugs or cups-were being ordered and will be distributed upon arrival. — About a year letter plaintiff noticed that some (other) inmates in his pod had the new '25 ounce bowls (plus he saw the new commissary list which had said items listed on it), so he approched agent (10) plus (11) and asked when he would be provided with a new Coffee mug/cup and bowl. Their reply

was that 'there wouldn't be any replacement coffee cups, but that he send them a request form and they would get him a bowl.'

90.    After a couple of weeks went by where plaintiff submitted several request forms in to said agent(s) (plus kept asking or reminding them of the matter during their regular rounds) but there was no response being given. Plaintiff proceeded to buy a informal complaint form from a inmate (because said agents wouldn't give him any upon request - by claiming he was 'asking for a service,' - and due to the back and forth issues plaintiff already had going on with them, see above and/or below counts), and filed it on the issue on jan 24/26, 2018, (Re: preserved at WRSP-18-INF-00206, in 'Griev, Proc,/Corissnap').

91.    Shortly after said form was filed 'agent (10) stopped by plaintiffs cell-door - during his rounds in B6-pod - and stated that they had received his complaint and that if plaintiff (would) agree to withdraw it he would get him a bowl, plaintiff pointed out (to him) that his complaint was dealing with both the bowl plus coffee mug/cup, and agent (10) responded that 'per the decree of higher up's only one cup was to be replaced (even if two were taken, e.g., if a tumbler and a coffee cup/mug was taken- from a inmate-only one of them was to be replaced - within the VDOC- and inmates would have to buy the other), so since plaintiff aleady had a replacement tumbler he couldn't get a replacment coffee cup/mug for the one that was taken.

92.    Plaintiff declined agent(10)'s offer to withdraw the complaint and he stated, "if you don't withdraw it I'll make you regret it later," but plaintiff stood his ground so agent (10) left his cell-door - B6-14 (note: during said exchange agent(10) even stated/asked "ofan, where are you getting your informal complaints from? I thought Stallard said he and some clo's took them all out of your cell thats why you keep

asking us for them," and he didn't answer him — see above at #68-72.

93.  Plaintiff submits that he bought his coffee cup/mug that was taken from him for $2.00, plus the bowl also cost him $2.50 and when agent (10) plus (11) retaliated against plaintiff by not providing him with said replacement item(s) — although plaintiff saw them providing several inmates in his pod replacement bowls — he ended up having to spend $4.04 and/or $4.26 in order to have a bowl he could eat out of (from the commissary), plus a coffee mug/cup to drink out of — all because he wouldn't withdrawl his complaint about the issue and/or the back and forth with said agents. — Plaintiff, also submits that agent (11) had also asked him to withdrawl his grievance (Re: #00052) in early 2017, and he had delined him then, thus all of the above was also to retaliate against him; (see below too).

94.  Agent (11) issued a response to the complaint on/about Feb 21, 2018 falsly claiming that he had instructed [Mr. oForil] to see him about obtaining a bowl, Plaintiff contends that he recognized this as (being) a stall-tactic-by said officials-(in retaliation) so he submitted a grievance in on the matter, and pointed out that he had already requested (for) a bowl and mug/cup but said agents failed/refused to respond (Plus, that they and others in step with them had been targeting, harassing and retaliating against Plaintiff for months' but his submissions on said issues had been disappeared). Agent (15) - however - joined in on the conspiracy (as usual) and refused to file/log the grievance and (instead) claimed that Plaintiff was requesting for services. — Thus, she also acted in retaliation against Plaintiff using the VDOC(s) griev., Proc., O.P. 866.1 — So Plaintiff sent a letter of appeal and complaint to the regional office - where he also presented details of what was going on, i.e., him being targeted and retaliated against, but they faild to address the issue.

43.

95.         Sixteenth: On Feb 23, 2018, agent (10) kept true to his threats (see above at #91 plus 92) and issued a Fabricated - or trumped up - charge against plaintiff and (his cellmate at the time) Mr. Stephens, in retaliation (note: Said charge was not issued For any legitimate correctional purpose(s), ie, agent (10) also searched over 20 cells in the pod that day and Plaintiff observed him taking out of them items of contraband (e.g., Stingers, cable and/or surge protector cords, and etc)

96.         On said date, after the Cell (B6-14) had been searched - during an annual/Quarterly shakedown and both occupants of the cell was returned to it, agent (10) and (11), came to the door and stated "I bet you will drop those complaints now." Plaintiff (who didn't hear everything they said after that statement went to the cell door and asked what was going on, agent (10) showed him a small piece of a surge protector and coax cable cord (which were hollow(ed) out, or didn't have any wire in them, - so they looked like), and asked who they belonged to, Plaintiff claimed ownership and explained that he used them - or items like that - as shower heads, (because most of the showers in the pod had cloging issues, so said items was normally used to keep the water coming down in a stright/single streem so none would hit the puddle and then get contaminated water back on plaintiff while he was showering), — later on charges was issued For him and his cellmate For said items.

97         For the case of WRSP-2018-0259, Plaintiff was deprived of due process, and prevented From taking advantage of procedural issues in the case, i.e.:

        a). Plaintiff was issued said Fabricated Institutional Disciplinary
            charge that was "AUTHORIZED" by agent (11) - a Co-Conspirator -
            on Feb 23, 2018, without (him) doing/conducting a adeQuate or
            impartial investigation (before that action) in order to find out
            what motivated said charge by talking to plaintiff

b). Plaintiff was deprived of evidence in the case, because he asked agent(14), at the hearing if he could introduce a 2-27-2018, officer (Reporting) Response Form - from his cellmates case - which proved that agent(11) was present for said events so he couldn't act as the OIC in the case (per: O.P. 861.1) but agent(14) told him he couldn't, (nor his contention that said agents issued the charge in retaliation), thus depriving him of said defense. — So plaintiff elected to try and help his cell-mate (out) with his false charge because he knew nothing of those items in question, (i.e., by pleading guilty to the/his charge).

c). Agent(14) "Found" Plaintiff "Guilty" of said charge based on Plaintiff's plea and penalized him $5.00.

Plaintiff submit(s) that agent(14) action(s) of not allowing him to present (or take advantage of) said issues allowed him to tilt the favor's in/of the case the way he wanted, which caused plaintiff to believe he had to submit a guilty plea in the case, thus violating his rights.

98.       The level I Appeal was denied by agent(2) on/about March 28, 2018, despite the above violations being presented to him (e.g. agent(11) couldn't act as OIC due to O.P. 861.i-X, A(6-b)), and when plaintiff had asked agent(11) for an informal complaint form to submit on the fact that agent(10) issued said fabricated charge against him in retaliation, it was denied to him by said agent who claimed because a charge was issued he would have to bring that up at his hearing.

99.       Seventeenth: During said time period plaintiff kept complaining about other retaliation events WRSP staff were subjecting him to in B6-pod e.g.:

a). On Jan 10, and/or 17, 2018 officials deprived him of

45.

– in B6-pod –

attending Sunni Services, and when he asked why staff
told him to write it up, but upon presenting the issue to
agent (10) and (11) they told him no complaint form would
be provided because the deprivation did not affect him
personally, (note: both acts were done in retaliation because
plaintiff had been complaining about said officials/agents
targeting him for months);— See above count (9)/issue(9))

b). On 1-26-2018 (at about 1:05 p.m.), agent (30)—who was in the
controle booth of B6-pod—refused to open Plaintiff's cell-
door for Sunni/islamic services (while doing so for the other
inmates/practitioners in the pod at the time).—A few minutes
later the doors come open for pod rec., so plaintiff
approched the booth and asked said agent why his door
wasn't opened for said program, and he responded "go fuck
yourself o'ron", then he phoned the floor officer and had
him conduct a search of plaintiff and his cell for about
25-minutes, (no complaint form was provided upon request
from agent (11) who claimed Plaintiff was asking for services).

c). On 1-30-2018, (at about 6:15 a.m.), the c/o in the controle
booth, of B6-pod, refused to open plaintiff's cell-door so he
could toss-out his laundry bags to have his dirty sheets,
boxers, t-shirt and etc washed and when plaintiff approched
the controle booth later on that morning and asked why
said c/o(s) told him "if you don't like what we did write it
up like you normally do everything else," plus, they too subjected
his cell to a targeted search that day, (no complaint form
was provided by agent (11) upon request because he claimed
the issue didn't affect plaintiff personally).

d). On Feb 14 & 15, 2018, The pod-B6-was deprived of 1-hour
pod/indoor rec., — So on 2-15-2018 (at about 12:45 p.m)
agents(2),(11), and (30) were conducting rounds in the pod, and
Plaintiff presented said issues to him verbally (to include
those presented above) and agent(2) responded that he had
been briefed on plaintiff plus his issues, and that it
seemed he was being handled according to their plans,"
Then said agents walked off (Plaintiff asked agent(10)
to provide him with a complaint form to pursue the
matter, but he was told none would be given because
he was not personally affected).

Plaintiff submit(s) that although most of his issues were circumvented by
the above actions of said agent(s), he still preserved some of them—along
with a few of the other events that took place later (on) e.g., see above at
#83, —by sending some letters of complaint(s) to the regional office about them.

100.        Eighteenth: On (about) march 2, 2018, while B6-pod was
being switched out with C6-pod, Plaintiff witnessed agent(11) passing the
(targeted) retaliation baton onto agent (8) again, i.e., prior to leaving out of
B6-pod plaintiff saw one of the white inmates in B6-4/5 ask agent(11)
for a bowl, and he left the pod and upon coming back—in a few minutes
he had a bowl that he handed to the inmate.

101.        A few moments later when agent(11) walked by Plaintiffs
cell (B6-14) he asked if he was ever going to get one of those bowls, and
agent(11) responded "not if I have anything to say about it." —Some
minutes later while entering C6-pod, Plaintiff witnessed agent(11)
pointing at him while talking to agent(8), and when plaintiff got
closer to them agent(11) told agent(8), "make sure ofori does not
get away with anything in this building."

102.　　　The weeks that followed, Plaintiff submitted several verbal complaints to agent(s) about staff who worked the pod violating some rights, (e.g., in and out-door's rec, being regularly deprived without cause; clo's taking commissary items during pod and cell searches without any confiscation form(s) being issued and etc., — see below at #108) but upon asking for informal complaint forms for said issues agent(s), told him to leave the matter(s) alone and/or that he was not personally affected, so none was going to be provided to him.

103.　　　**Nineteenth:** On March 23, 2018, plaintiff was again singled out and targeted in retaliation for his complaints and grievances he had submitted on issues in the pod and the prison (see above: count(s)), On said date the entire C6-pod was being searched by officials, and agent(25) conducted a shake-down of plaintiff and while he was dre ssing/putting his socks back on he noticed that his all metal 'Time-X' watch was still on his rist, so he stoped and took it of then tossed it on the table, (so it wouldn't go off at the metal detecter (chair); — Note: The watch cost over $260.00).

104.　　　Agent (25) stated that he thought he saw something else so he called a Sergeant McCray and they both searched him again, and during it agent (25) and a Sergeant Ferguson joined them, i.e., they took turns looking through the window, and at no time did anyone (else) claim that they saw anything. — After plaintiff and his cellmate were hand-cuffed officials then took them out of the cell and to a/the metal-detector (at the front of the pod, upon getting back he observed agent (25)(8), and Sergeant McCray standing (between cell C6-13 & 14) in a circle with a sock(s) and extracting items out of it.

105.　　　At no time did any official ask plaintiff or his cellmate 'who said items belong(ed) to' (note: agent (8) did ask who the watch belong to and Plaintiff claimed it). When plaintiff was returned

to his cell he noticed that the all metal watch band had been detached from his Time X watch, so he asked agent (8) why that had been done, and he responded that we weren't allowed to have those kind of watch bands, so Plaintiff asked for a confiscation form and an informal complaint form so he could write the issue up and agent (8) responded that "dont worry ofori since you like complaining so much, you got a charge coming for it," then he turned and told agent (25) to issue Plaintiff a charge. —— Soon after Sgt. McCray came to plaintiff's cell and served him a charge, (fabricated) Possession of Contraband. Upon information and belief plaintiff submits that said agent(8) planted the/a stinger in order to issue him a false charge to aid their ongoing retaliations

106.          For the case of WRSP-2018-0476, Plaintiff was deprived of due process, and prevented from taking advantage of procedural issues in the case, i.e.;

    a).Plaintiff was issued said fabricated Institutional Disciplinary charge that was "Authorized" by-a Co-conspirator-On March 23, 2018, agent (8) without (him) conducting a adequate or inpartial investigation (before that action), and while knowing its nefarious motivation(s).

    b).Plaintiff was deprived of evidence in the case, because he asked —at the 4-2-2018 hearing—for a review of the video camera footage of said event to prove that agent(8) and Sgt. McCray witnessed and was a part of the incident so they couldn't act as the OIC and serving officer (Per O.P. 861.1-X, A(6-b) — and -XI; B(12) in the case; Plus that the stinger was planted in his cell-or in the case- by said agents, but agent (13) refused the request(s), plus he told him he couldn't present a retaliation defense because those issues had to be raised through the

grievance process (nor did he want to look at any of the
alleged items of contraband - for himself as the fact-finder)

c). Agent (13) "found" plaintiff "guilty" of said charge based
on "no evidence," - plus, while knowing about plaintiff's
contention(s) of being targeted and retaliated against
by said agent(s) (and he didn't want to examine said
items for himself - as the fact finder - to confirm
that they/it was contraband).

Plaintiff submit(s) that agent (13)'s action(s) of not allowing him to
access/present (or take advantage of) said issues permitted him to find
plaintiff guilty in said case, and penalized him $10.00, thus violating his right.

102.          The guilty decision- of said fabricated charge - was appealed
to the Level I, or agent (2), but it was denied by him on/about april 24, 2018
despite the above violations being presented to him, and plaintiff (again) asked
agent (8) - plus other building supervisors- for a informal complaint form to submit
on said issues, but he was again told none would be provided because a charge was
issued against him.— Plaintiff ended up sending a letter of complaint to the
regional office, - where he also presented details of the targeted retaliations
he was being subjected to by several WRSP staff (in total) - plus other violations
but they failed to address the issue, (note: he also preserved the issue(s) with/in
other submissions, - to include the damage to his watch).

108.          Twentieth: In march and april 2018 plaintiff (plus other
inmates in C6-pod) submitted several complaints in-to agent (8) and other
building supervisors about issues in the pod, that violated their/his
constitutional and other rights, i.e.;
                                              - C6 -

a). Being deprived of pod recreation (via, officials only
allowed about 1½ hours) on March 7, 11, 17, 18, 19, 26, 27, 2018
and April 1, 3, 5, 10, 11, 12, 13, 2018.

b). Being deprived of outside/doors recreation/exercise on

March 12, 27, 2018 and April 2, 2018.

c). Being deprived of personal property (Food and other items)

by officers searching inmates/him during pod rec., on

March 7, 2018 and April 2, 11/16, 2018.

Note: most of the above violations was by agent(27) and (28) — Plaintiff

submitted informal complaint forms in on most of the above occurrence

(plus the fact that agent(8) and other WRSP officials had the pod-C6-locked

down on march 21/22, 2018 — under false grounds — in order to penalize the/most

inmates therein for their complaint(s) about some of the above issues), but they

were disappeared (or circumvented) by prison officials, and attempts to

present said issues verbally to agent(3)(4), and other supervisors — with

agent(8),(27),(28) and other officers present or in tow — during their rounds,

was unsuccessful on March 14, 2018, (at about 11:30 a.m.); march 20, 2018 (at

about 11:48, a.m.); and april 12, 2018 (at about lunch-time), — All in C6-pod ~.

109.          As a result — of the above-(said) officials targeted and

retaliated against him, i.e., on april 19, 2018 agent(27) and (28) conducted

a search of plaintiff(s) cell-C6-14- while he was present but his cell-mate

(mr. Stephens) was not, about 5-minuets into the search mr. Stephens walked to

the cell and asked if his presence was needed and agent(28) said "we got who

we came here for so no." — Right around that time agent(27) asked

plaintiff "what is this? while holding up a pair of earbuds wrapped in some
— which cost #27.00 —

tissue," when plaintiff answered him, he then leaned over and whispered

something to agent(28), and moments later they both exited the cell with

a pillow case full of items he couldn't see and told him to pack his property

because he was going to the hole. (they also called a Sgt. for the search who showed up)

110.          While he was packing his personal property officials opened

his cell door and told him the supervisors wanted to talk to him in the

51.

pods office, Upon geting to the office with all of his packed personal property, Plaintiff saw agent(8), a Sargent, Unite manager, and said officers who had searched his cell, —plus others—, and while there agent(8) stated that he had approved for plaintiffs cell to be searched because he was doing too much complaining in his building, then he asked if plaintiff would stop his submissions (especially when his bosses— agents(2)(3), (4), and (5)— was in the pod, or conducting their rounds, because it makes him look bad). —— When plaintiffs reply did not suggest that he would comply, agent(8) told the officers to take him to seg., and although no items of contraband was found, said agents issued fabricated charges against Plaintiff. (note: plaintiffs attempt to get some informal complaint forms(s)—for said issue(s)—from supervisors in seg., was unsuccessful, i.e., they told him a charge was issued so he had to present that retaliation claims at his hearing(s), and when this was un-successful—at the hearing— plaintiff again asked agent(8) for an informal complaint —the day he was let out of seg.,— but, he told Plaintiff he couldn't help him because he could only present those issues at the hearing for his charge(s)).

III.                     For the cases of WRSP-2018-0735 and 0740, Plaintiff was deprived of due process and prevented from taking advantage of procedural issues in the case(s), i.e;

        a). Plaintiff was issued said fabricated Institutional
            Disciplinary Charges, on 4-19-2018, and he was deprived
            of (exculpatory) evidence in the case(s) because agent(14)
            claimed he didn't get any of his officer response forms
            which asked agents(27) and (28) some valid questions about
            the cases (e.g., what made said item(s) a stinger/intoxicants,
            what did the offender claim ownership of, was said
            charges issued in retaliation, and etc); nor his

Documentary evidence and witness request forms, but
agent (14) wouldn't call said officials to the hearing (or by
telephone) to address any issues because it wouldn't favor
his objectives; and he wouldn't allow access to the video
camera footage of said event to prove the fact that the
serving officer was present for and during said search
plus those agents didn't come out of his cell with a gallon
of intoxicants and 24 bags of apple juices, (note: they had
searched other cells before plaintiffs).

b). Agent (14) "found" Plaintiff "guilty" of said charge based on
no evidence, — plus while knowing about plaintiffs contention(s)
of being targeted and retaliated against by said agent(s),
(and he didn't want to examine said items for himself – as a fact
finder – to confirm that they were contraband and/or intoxicants).
Plaintiff submit(s) that agent (14) action(s) of not allowing him to present (or take
advantage of) said issues allowed him to find plaintiff guilty in those case(s) and
penalized him $5.00 – for case # 0740 – plus $12.00 – in case # 0735 – thus
violating his rights, (plus, depriving him of his ear-buds, unlawfully).

112.          The guilty decision(s) was 'appealed' on/about may/june, 2018
                                    — by agent (2) —
but they were 'denied' on june 14, 2018 dispite the above violations being presented
— upon plaintiff buying some informal complaint forms from other inmates
and submitting them on some of the above issue(s) (plus the fact that o.p. 861.3,
was violated because he was placed in sep./RHU without a ICA hearing being
afforded within 72-hours, nor being seen by a QMHP at all, his submissions
was circumvented, (Re: preserved at; WRSP-18-INF-00919), by agents (5)
and (15). In addition, when plaintiff was released from RHU on april 27, 2018
– as noted above – he saw agent (8) while he was entering c1-pod, and – in
their talks – he also stated to plaintiff " I hope you act right this time, because

53.

you know what can happen to you again," Plaintiff didn't reply to that but later that day — while the pod was being let back in after outside rec., — he was in the counslor(s) office, So plaintiff asked him about his missing personal property, and agent (8) stated — with a smerk — that "some of your shit was thrown away so don't worry about getting anything back."

113.    Twenty-First: When plaintiff was taken to segregation or RHU — in the morning — On april 19, 2018 he packed all of his property and delivered them/it to the c6-pods office, where agent (27) and (28) — later on — conducted an inventory of his personal property (without him being present — and agent(8) was in the office about the same time). — At about 2:00 p.m., agent (27) appeared at plaintiffs cell in RHU/seg, to deliver some of the/his personal property he was allowed to have. At first agent (27) demanded that plaintiff sign off on said inventory form(s), but he declined and told him that he wasint signing any form(s) till he could check it to confirm its accuracy.

114.    Upon doing so plaintiff pointed out some discrepancies to him and agent (27) assured him that any items not in his bags he was about to get was most likely in his bags/boxs which were sent to personal property storage so he could write for them to be returned. After plaintiff received his property bag(s) and looked through them he discovered that several items was missing, i.e;

    a). 5,988-pages of legal documents (i.e., court records, case
          files, authorities, declarations and etc,)
          estimated at about $0.50, a page.           $2,994.

    b). 5- Books (legal) — A 5-Vol. Set of American Jurisprudence 2d'  $7,805.00.

    c). 1- Pair of eye glasses               $39.00.

    d). 400- photos (388-commercial photos — $6.00, ea.- and
          12- Personal Photos).              $1,552.

    e). 4 - Frankincense oil, ($4.71 ea),         $18.84.

F). 2—Fish Oil w/omega 3, ($10.62, ea),                    $.21.24.

g). 3—Advance Ultrex Vitamin, ($6.27, ea),                 $18.81.

h). 3—1 a Day Multi-Vitimin, ($3.66, ea),                  $10.98.

i). 1—generic Zantac,                                      $5.15.

j). 2—Fruit Flv Antacid ($4.20, ea),                       $8.40.

k). 8—Sensadyne toothpast ($5.95, ea),                     $47.60.

l). 3—Suave X—Relief lotion, ($4.60, ea),                  $13.80.

m). 2—gold bond Powder ($8.79, ea),                        $17.58.

n). 2—A & D Ointment, ($5.32, ea),                         $10.64.

o). 3—Medicated tar Shampoo ($4.91, ea),                   $14.73.

p). 16—Power up deodorant, ($2.67, ea),                    $42.72.

Note: Plaintiff was not allowed to conduct said (personal) inspection of his property until he signed off on the inventory form(s), —ie., a common practice with staff at WRSP to make inmates sign said forms befor giving them their property (which might not be in proper form), and/or if they refuse said demand(s) they are deprived of their personal property while in RHU/Seg.,.

115.        When plaintiff was released from segregation/RHU on april 27, 2018, a C/o/Ms. Gibson brought him his personal property that was placed in storge, and upon inspecting it he discovered that the above listed items weren't being returned so he informed her of the issue and she responded by telling him that she sees those inadvertences on the part of officers all the time so to go ahead and sign of on the inventory form and she would contact agent (27) (28), and the (personal) property officials to have his property looked for and returned. (Note: Plaintiffs shower shoes and some hygeine items which weren't given to him in RHU or failed to be listed on the inventory forms was returned).

116.        Later that day—while Plaintiff was in front of the

building (c) - c/o gibson called out to agent (27) who was in the control booth/room of C-4,5,&6 pod(s)/side and informed him of plaintiffs issue (or missing property, and agent (27) responded/stated "who that guy?, hay bud, you got what you was going to get so that's that." — Plaintiff submits that said agents intentionally took or discarded said items in retaliation for the complaints and grievances he had been submitting against them, their unlawful actions - as presented above-, and/or issues at the prison. (Plaintiff was able to preserve the issues in a complaint and grievance at; WRSP-18-INF-06890 in Griev, Proc,/Corissnap', plus a letter of appeal/complaint to the regional office, because agent (15) joined in on the on going retaliation by using the VDOC (s) offender(s) Grievance procedure - O.P. 866.1, wher upon said grievance being submitted she 'Refused to log' it (upon intake), by (her) stating: Request for service(s), Therefore, that's unlawful).

117.        Twenty-Second (th): From mid/april, 2018 (to later that year plaintiff kept on submiting complaints about some perpetual - or the same issues in c1-pod (or at the prison), that had him set up and sent to RHU (earlyer that year), to agent (8) and other supervisors (Plus administrative officials like agent (2),(3),(4), and (5)) during their rounds - or otherwise - so agent (8), (Plus some of the officials just mentioned) had some of their croons — agents (29), (31), plus c/o(s) C. Long, Rutledge, D.I. Brown, I. Gilbert, T. Persons, and others — start targeting, harassing, and retaliating against him, E. G.;

        a). In about mid 2018, agent (31) walked by the shower (during c1-pod rec.) while plaintiff was necked and washing up and looked him up and down while making lewd comments about body parts, (e.g, he stated "nice ass and chest ofori," when plaintiff voiced an objection, said agent reply (ed) that if he didnt shut-up he would (Pay someone

~some tobaco(drugs-to) have him raped &/or jumped-on.

b) In about mid 2018, agent (31) walked by plaintiffs cell (C1-13½-24)
while he was offering salat/prayer (in prostration), and he
stated "nice cheeks ofori," (several times), — during said time
period he would also kick plaintiffs cell-door during his
salats just to distract him, (during said agents rounds).

c) During said time period c/o's C. Long, and agent (29),(31), plus
others (staff) in the pod used the fact that there wasn't any
official means to determine whether a inmate received a
'meal tray' between down and sunset during the religious fast
of 'Ramadon' to deprive/defraud plaintiff, who was (properly)
observing it, of his money (about #4.20) from his inmate
account, for (food) tray(s) he never took/accepted. — Plus,
agent (8) was instrumental to said violations because when
plaintiff asked him for a complaint form to pursue the
issue he stated that "you better leave it alone or am going
to have him charge you somemore and hit your cell with
a shank." (note: this was in june/july, 2018 — preserved
in: WRSF-18-REG-00218).

d) During said time periods agents (8),(29),(31), and other
c/o(s) like Mr C. Long, Rutledg, P.J. Brown, J. Gilbert, T. Persons,
regularly subjected plaintiff to summary deprivation
of in¢out-doors recreation, e.g., on sept 17,18, 21,26,2018;
oct 1,18, 19/20, 22,23, 29,30, 2018; Nov 1, 2018, plus other
occasions that those individuals ordered plaintiff
to return to his cell (for no reason) or they would
fabricate a charge against him if he did not comply.

e) During said time periods agents (8),(29),(31), and other

57.

c(o)s like Mr. C. Long, Rutledg, D. I. Brown, J. Gilbert, and
T. Persons, regularly subjected plaintiff — and his cell —
to searches (unreasonably) where they took his personal
property without issuing him any confiscation forms,
e.g., 8-2,3, 7/8, 17-2018; 10-25-2018; plus other
occasions that those individuals conducted said
unlawful search(s) on plaintiff or his cell. (Note: they
even did petty and harassing acts/things like throwing
away plaintiffs toothbrush() during said cell walk
through shake-downs, plus tuching his eating bowl
and drinking cup with the same gloves they used to
tuch his floor and toilet rags/sponge).

F). During said time periods agents (2),(29),(31) and other
c(o)s like Mr. C. Long, Rutledg, D. J. Brown, J. Gilbert, and
T. Persons, regularly and intentionally would not open
plaintiffs door (cell) to let him attend religious programs.

g). Plus other violations not presented here.
Plaintiff submits that his attempts to submit complaints in on said
issues was mostly circumvented by building supervisors refusing to provide
him said forms and even when he was able to otherwise find (said forms
to submit (them) on those issues, they were disappeared by agent(15)—plus
others,—who use said VDOC policy to retaliate against him — So plaintiff
(has) preserved the issues with letters of complaints to the regional
office request forms to several departments, and etc.

118.            Twenty-third(th): Plaintiff submits that his initial
attempt to send the complaint (in this case) out for filing was
circumvented by WRSP officials, i.e., On/about Sept 30, 2018, Plaintiff
turned in said complaint (which was in a sealed envelope) into one of

58.

The building(s) – (C) – Supervisors to be sent or mailed out – via; legal (mail) postage withdrawal request and certified mail return receipt to the U.S. district court in roanoke, VA. — After several weeks had passed without any indication that the prison had sent said mail off plaintiff began making some inquiry(s), but when the response he was receiving wasn't making any sense to him, he (then) commenced an informal complaint on the issue on/about November 3, 2018.

119.            On nov 19, 2018, Plaintiff was called to the prisons investigators office when said mail was returned back to him in an envelope that had been opened outside of his presence. (note: it was returned due to a – claim of – mistake in the address). Upon inquireing as to why his mail was opened outside of his presence, the investigators told plaintiff that "that's how it was from the mailroom" and when he inspected the contents, plaintiff discovered that several documents were missing/taken, (i.e., sworn affidavits and declarations from several inmates; undersigned forms with signatures accumulated from a substantial amount of inmates in several buildings at the prison; plus original complaint and grievance forms submitted on some issues and/or staff at the prison – over the years – request forms to several departments at the prison, and letters of complaints to the regional office about issues and/or staff – unlawful actions – at WRSP) — said erroneous address was intentionally provided by agent(12) to plaintiff – in 2018 – also to retaliate against him for his complaints about inadequate access to legal means at the prison.

120.            On nov 21, 2016, while agent (3) and (11) were conducting security rounds in C1-pod, and they walked by his cell (C1-24) plaintiff first stoped agent (3) to ask when he would be – taken of WRSP ban list and allowed to confer/see the institutional attorney? (Plus plaintiff presen-

ted other complaints like The pod being Subjected to back to back
-unlawful-lockdowns), and agent(3)-just-ignored plaintiffs' contentions
and Stated "just So you know Those were Some bullshit affidavits you
had with your lawsuit," when plaintiff looked at him with a puzzled
expression, he just walked off.

121.                    Agent(11),-Came moments after-(and) stoped by
plaintiffs' cell on his own and Called him to The door then he Stated
"ofori, we go way back to 'red onion, why would you lie on me like that
in your lawsuit," when plaintiff gave him another puzzling look he
walked off too.——Due to the fact That Said agents Statments
Suggested to him that they had first-hand Knowledge of the Contents
of his missing documents (and/or the lawsuit), i.e., they had to have read
Them/it, so on 11-22-2018 plaintiff Submitted a Complaint (in) on the issue(s),
Plus followed up with a grievance and a letter of Complaint where he
presented Said issue(s)—and others—but they were all circumvented (note:
he had already filed a prior Complaint on how-long it took to send
Said mail out so he also presented Said issues in it (on its grievance) too)
dispite plaintiffs' Contention that agent(3),(11), and other WRSP staffs
had tempered with his mail(ing) (at the prison) befor in retaliation,    —no action was taken—    Plaintiff
was able to obtain Some declarations to Support his/the events, (plus,
issues preserved at: WRSP-18-INF-03149 and 03264, in Griev., Proc., or
Corris(nap'), Due to the above(s) Plaintiff was Subjected to (more) retaliations.

122.                    Twenty-Fourth: Plaintiff Submits that agents'(3),(8), and
(11) targeted him (some more) for retaliation due to (t)/his lawsuit, by having
officials issue false Charge(s) against him, i.e., On nov 21, 2018 when
Said agents entered C1-pod to look into a issue (allegedly related to
Security) with one of the cells, and they both Conducted rounds or
inspections in the pod (agent (11) on both tiers, and agent (3) only on

The top tier), where during said time - period(s) - they visually inspected most/all the cells and if anyone of them was not in compliance it was addressed on the spot, (e.g., They told inmates what to correct in the cell or to hand over any -visable- items of contraband and etc). — Said agents did not require any corrections of plaintiffs cell during their rounds which occurred about 8:00 a.m, to 9:33 a.m, (and only made some/said sugested comments to plaintiff - see above at #120-121 ).

123.          At about said time, two officials (a sergeant Fergeson and agent(29)) were also conducting a -visual- security check of the cells in the pod, while they were on the bottom teir agent(11) talked to them and pointed toward or at plaintiffs cell, plus moments later (while they were climbing the stairs towards cell-44) agent(3) stoped them and directly pointed at plaintiff while talking to them. — Upon info, and belief, plaintiff submit(s) that agent(3) and (11) instructed them to issue fabricated charge(s) against him, (note: inmate 'C. Averette,' #1476730, who was in cell C1-43 at the time, was on the door and said: agent(3) tell agent(29), "make shuor you charge ofori over there with something." — Due to this plaintiff secured a declaration from him as to said tactics/events or exchanges).

124.          When agent(29) arrived at plaintiffs cell he conducted a visual chech and then called the sergent and they both looked through the cell doors window and (they) instructed him to take a piece of soap that was on the wall down, (there was no string attached to it). — Note, prior to getting to his cell (and after), plaintiff observed said officials open the tray-slots to several cells to retrive stingers, strings, or items of contraband, - but this did not occure with him because he didn't have any such items. — Later that day the same sergent appeared at plaintiffs cell and served him a charge - for tempering with a

61.

security materials, devices, or equipment (120 B) - where agent (28) fabricated the facts and claimed that plaintiff had a line hanging in the cell with items on it obstructing the view of parts of the cell. (Re: 'case # WRSP-2018-2138), Plus said written report had a familiar cadence and wording with other charges he issued that day (e.g. # WRSP-2018-2137)

125.        For said case, plaintiff was deprived of due process and prevented from taking advantage of procedural issues in the case i.e.,

 a). Plaintiff was issued said 'fabricated Institutional Disciplinary Charge' on nov 21, 2018, and he was deprived of evidence in the case because agent (13) violated O.p.861.1, XV(c)(2) when he wouldn't review the video for said event, nor did he want to produce said item plaintiff was accused of destroying.

 b). O.P. 861.1-XV(c)(9) was violated when agent (13) determined that plaintiff was charged with an incorrect offense and vacated the 120B charge to a 111A, but failed to afford him all of the process that comes with that procedure (i.e., he didn't have the new charge re-served and all plaintiffs rights afforded), nor did plaintiff waive said re-servic/right.

 c). Agent (13) "found" plaintiff "guilty" of said charge based on no evidence - plus, while knowing about plaintiffs contention(s) of being targeted and retaliated against by said agents.

Plaintiff submit(s) that agent (13) action(s) of not allowing him to present (or take advantage of) said issues allowed him to find plaintiff guilty in said case thus violating his rights, (plus, he was penalized

$6.00). — Note: Plaintiff did ask agent(8) for an informal complaint form to submit on the fact that said charge was issued in retaliation, but said agent (again) claimed he had to present those claims at his hearing because a charge was issued, (this took place on/about 12-5-2018).

126. In addition, prior to the dec 6, 2018, hearing several officials approached Plaintiff and intimidated him with threats of retaliation(s) if he called agent(3) as a witness in the case (e.g., on dec 5, 2018, at about 9:50 a.m., agent(3) - with agent(8) - conducted a round in C1-pod and when plaintiff stoped him to ask about some issues (i.e., legal access, deprivation of rec, and etc), he looked him up and down and scornfully said "you better do the right thing at your hearing tomorrow or else," then agent(8) followed up and stated "oteri I am supposed to be leaving this building soon, if you call mr. combs to your hearing am going to tell whoever gets the building after me to fuck with you hard." — While contemplaiting said agent(s) threats, on dec 6, 2018, agent(13) entered the pod and talked to agent(29) - in the pod(C1) - for a few minutes, then agent(29) came up to plaintiffs cell and told him he had enough influence in the pod to have one of the inmates stab him up, so because plaintiff was in fear for his life/safty he elected not to call agent(3) to the hearing. (note: ever since being housed in said pod, Plaintiff had witnessed at list 3 events/fights that took place because agent(29) wanted a inmate out of "his pod.").

127. Plaintiffs level I Appeal was Denied by agent(2) on jan 9, 2019, despite the above violations being presented to him, plus his level II appeal was Denied, without any review, (and no reply was provided to his letter of complaint about several of said WRSP officials conspiring to target, harass, and retaliate against Plaintiff — plus other violations).

## B - Additional Points And Facts To Be Considered.

138.        (1st). Any Conducts described herein by said agents or defendants under any VDOC operation procedure (O.P.) is proscribed by The Code of VA § 53.1-10 and 25, as said statute is The (b) are Authority. For all VDOC policy or rules.

129.        (2ed). With the above event(s) where plaintiff contended That his submitted informal complaint form(s) was "disappeared" and/or "circumvented," it was because he placed said forms within the WRSP mailing system addressed to the grievance department, — the only location at the prison which processes said form(s), Plus the only route allowed at the prison for filing said form(s).— And that when he did not get his receipt(s) within the allotted 2-day(s) (which sometimes might be 3/4 days give or take), he followed up with request forms-inquiries- to said department which was normally ignored, (but every once in a while evading reply(s) was issued).—— For some of said events plaintiff was able to find another informal complaint form -and a few time(s) some regular grievance form(s)- to submit on his issue(s), but he ended up with the same -above- results, And this was (Primarily) because he named WRSP staff in said applications who were targeting him for retaliation, so this regularly ended up with plaintiff sending letter(s) of complaint about said issues to the regional office in hopes of getting some intervention, but there was none.

130.        (3rd). First — Non-Frivolous Litigation Facts.— In case No. CL-2014-6876, Plaintiff contended that a judgment order -and some obligation(s) thereunder -(Plus an ancillary order of modification) was being unlawfully subjected to him, i.e., Plaintiff was being incarcerated at Sussex II State Prison (SIISP) and in early 2013, he noticed that the prison was deducting money from his inmate account. When he asked

why SWSP told him it was for "court withholding" and to contact the Fairfax Co., circuit court for more details. On April 13, 2013, Plaintiff mailed the Fairfax Co., clerks office inquiring about the deductions. The clerks office responded that Plaintiff owed the court $886.00 pursuant to a 2000 judgement order, (in case #FE-1797-76842, against a "Terry ofori" whose SSN is *3108 — compare with plaintiffs status below at #131(E)). — After filing several unsuccessful administrative grievances with the VDOC, Plaintiff filed an application/complaint with said court on may 2 and/or October 24, 2014, where he essentially sought a determination that said order(s) are/were void as to him because the judgement order wasn't issued against him.(plus, Plaintiff also challenged the constitutionality of VA(s) limitations period governing habeas petitions; i.e., he argued that Va. Code §8.01-654(A)(2) violates the suspension clause in article I, §9 of the constitution of Virginia because it does not have a discovery exception). On jan 2/2016 the court issued a finall order denying him relief because he used the wrong vehicle.

131.         (4th). Second — Non-Frivolous Litigation Facts — During the period(s) of/from (about) Oct 2013 to Sept. 2014, Plaintiff was subjected to some collaborated incidents - by SWSP officials - which resulted in several violations of his federal and state constitutional - as well as statutory - rights, i.e., claims pursued in the Sussex Co., circuit court:

    (A). For submitting complaints & grievances (forms) in - about issues and staff - at the prison, Plaintiffs cell was subjected to a search — in retaliation and while he was absent — On oct 16, 2013 by a L.t., or investigator Mr. Hayes and as a result of the search some of plaintiffs personal property come up missing and he discovered this fact later on (note: because Plaintff wasnt present for the initial search, Mr. Hayes and

any other VDOC/SWSP official(s) in the pod - at that time - owed him a duty of care in keeping track of his property while (it was) in their care, custody plus control - for the purpose of being searched - and this duty was breached by said officials, which caused Plaintiff loss or damage(s); - while he was housed at/in building 2, cell, at SWSP, - i.e.;

⓵. About 800 commercial photos - Valued at $.15.00 apiece.

⓶. About 20,000 pages of legal documents (courts & lawyers case files, copies of case laws, and other authorities, & etc), - Valued at 25/50¢ a page & $2.00 ea. certified page(s).

⓷. Court transcripts - Valued at $1,300.00.

⓸. 3-Books: Corpus Juris Secundum, - Valued at about $7,000.00 (or $7,500.00).

⓹. Brochures and catalogs, - Valued at $200.00.

Plaintiff's complaint form (on nov.1, 2013), and grievance form (on nov 14/15, 2013) were circumvented by Ms. James - the institutional ombudsman - who claimed falsly that the filing period had expired, but the issue was still preserved (even though said items were not searched for and returned).

(B) For refusing Mr. Hayes order - after said (or a second) search - to to threw away some soda and water mix plaintiff was told to pack his personal property because he was being sent to (Seg.) ex-portion, but by the time he was taken to Seg. by a Sargent/Mrs. Johnson, it was late in the day, and when plaintiff informed her that he had not received any food/tray for dinner, she assured him that one would be provided later, however when she asked plaintiff why he didnt just comply with said order so as to save her the work of having to take him to Seg., and plaintiff responded that he does not get any payment(s) to make her job easier, - no tray was ever provided - and plaintiff contends that she intentionally deprived him of food in order to aid Mr. Hayes (plus her self/other's) in his (or their)

66.

retaliatory agenda(s)/action(s) against Plaintiff, (: She breached her duty).

(C). As a result of Said Search and plaintiffs refusal to discard his water and Soda mix, mr. Hayes issued a false charge against him where he fabricated the facts and claimed that plaintiff was in possession of intoxicants, Plaintiffs due process, (several procedural issues) and other rights were violated by the IHO/Ms. Rodriguez, who presided over the case, e.g.,[1] She issued a postponment in the case, That Violated O.P. 861.1-XII and IV(D) (which also resulted in inadequate notice That affected his ability to prepar a defense);[2] She prevented plaintiffs witness/cellmate (o. Anderson) from Submitting a - Faverable- Statment in the case, (note: She also failed to have an employee witness That mr. anderson refused to Submit a written Statement), and She falsly claimed not to have received plaintiffs witness Statement request for a clo mathis; and[3] She was also not impartial in the decisions She made in the case, i.e., issuing a finding of guilty without produceing any test results to prove that The Substance claimed to be intoxicant by mr. Hayes actually had any intoxicants in it, Plus She made Several Statements during the hearing That Sugested That She did not consider — in good faith — the Substance of Plaintiffs defense, (note: She even laughed at plaintiffs contentions during Said hearing), and etc. — at a oct 22, 2013 hearing where plaintiff was also penalized 20-days in Seg., Plus his appeal of Said case was also Unsuccessfule. — Thus, due to the above breaches of duty(s), plaintiff was Subjected to Said damage(s).

(D). As a consequance/result of Said fabricated charge (and the ongoing retaliations) plaintiff was forced by SIISP officials to be housed in a 'non-Privilage, or Structured living unit/Program - Pod/building -(SLU) upon being released from Seg., on/about nov 7, 2013, and Said conduct was in violation of his (constitutional) rights, i.e.,[4] Plaintiff was never provided

with any notice (nor hearing) by prison officials that he was being considered for placement in said program (which drasticly and severly deprived him of several rights and privileges), thus violating due process and also resulted in him being penalized twice for one charge, (so it shouldn't have been imposed because he didn't recive said penalty at the hearing for the above charge. — Nor was there any proper (or adequat) post deprivation remedies because the grievance process was regularly circumvented by SIISP officials (or Ms. james — see below) and [2] Plaintiffs' equal Protection rights was violated because prison officials compeled him to compleat over 90 days in said program but other inmates similarly situated had no such obstacle(s) placed in their way.

(E). As a result of being housed in said pod, building, or program (the SLU), SIISP officials subjected Plaintiff to religious rights violations or discrimination and intimidation(s), i.e., Plaintiff requested to be allowed to attend islamic religious services during his stent in said pod, (e.g., on jan-24 & 31-2014, plus Feb-12-2014) and SIISP officials refused to let him, however several inmates were regularly permitted to exit the pod/SLU to attend other religious services (e.g., on 1-25 & 26,-2014 plus Feb 22, 2014 for the KAIROS christian services), — and plaintiffs' persistant Questions and/or complaints about said issue(s) led to prison officials(or Ally/Mr. Baily & other(s)) threatening him with fabricated charges, being sent to segregation, and etc.

(F). While being housed in said building or program, a review was conducted where plaintiff discovered (ferther/in part) that — and/or how — the VDOC was subjecting to him obligations from several judgement orders that were not issued against him — see above at #130 — (i.e., Plaintiffs' true name and identity is Terry K. Ofori, S.S.N.; XXX-XX-7824, and the order(s) at issue or being unlawfully imputed to him require(s) — one or — the person(s) of TERRY OFORI, S.S.N. 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, or S.S.N. Unknown to be

68.

held accountable). And to the present (day) VDOC officials are still relying on said unlawful instruments to take money from his inmate account for court fee(s); to issue him unfavorable points for his security and GCA level reviews - during his annual reviews - which prevents him from being transferred to a lower security level institution(s) (and even effects his employment opportunity(s) within the VDOC), plus affect his release date and parole chances/eligibility and etc. — Since the responsibilities of Mr. Clark and Ms. Brown, in part, is to receive all court orders and commitments of prisoners or persons to the VDOC and to supervise computations of the time of their sentence(s) (or any other obligation ther under, etc — see Va. Code §§ 53.1-8, 10, 20, 23, 24, 25, and 28), and because said officials have a ministerial or official duty to refuse to accept - or execute - the order(s) at issue as drafted; (if they are not accurate - or if they are wrong - in any way, see also: Ziats V. Comm., 42 Va App. 133 (2003)). Plaintiff sent said officials (who's in-charge of the VDOC and/or court and legal services - which is a department within the VDOC) in richmond, VA, an application on/about Nov 2, 2013, setting forth his issues and informing them that he didn't seek to challenge (the very fact of) said judgment order(s), nor the duration of his physical imprisonment, but that he requests that their office contact the courts where/which said orders originated from, and ask them to correct/address said (or any) erroneous information, in their records/instruments (and/or in the judgment *or issues* orders), or their office will (have to) reject them (for said cause(s)), but no response was ever issued to plaintiffs inital application, nor the letters of complaint he sent to said officials, thus his constitutional and other rights are still being violated, (grieved on Jan 24, 2014).

     (G) While being housed in said building or program (SHU) plaintiff was compelled to consume and use contaminated water that was regularly.

Supplied/Provided at the prison, and this resulted in some health issues—with him—that the medical department at SWSP was not trying to treat him for, Plus other Violations of his rights related to said event(s).— This took place from 1-20-2014 to 2-4-2014, and was presented to Mr. Bailey, teacher, and MS. Varga without any of them addressing the issues Plus his complaints and grievances on the issues failed.

(H). While being housed in Said pod or program, SWSP medical department forged plaintiffs medical records or forms in order to remove money from his inmate account as a Sick call fee for services they never rendered (nor did he ask for), and MS. S. Hack was complicet in said unlawful conducts. — Per state statute (i.e., 6 VAC 15-40-520), and VDOC policy all medical service(s) fee debits to inmate accounts shall be acknowledged by the inmate in writing. So, it came as a suprise to plaintiff when he received a receipt (from MS. Hack) on/about Feb 12, 2014 showing that $5.00 had been taken off his inmate account for co-pay — charge/receipt — sheet, thus he was unlawfully deprived of his proerty interest.

(I). While being housed in Said (SLW) building, a c/o/MS. claiborne, conducted a walk through shake-down of plaintiffs cell (4c-10) on april 12, 2014, —acting on behalf of Mr. Hayes, and others in retaliation—and prior to exiting the cell she stated "hoyes says to tell you stop filing all those dame paper works, and lay it down somewhere." — As a result of said search MS. claiborne had plaintiff sent to seg-agation and she issued a false charge against him, where she fabricated the facts and claimed that he was in possession of intox/cant's, and during the entier process MS. Rodrigus—IHO—and others (or SWSP officials) violated plaintiffs (due process and) procedural (plus tort) rights, i.e.; [1] said charge was never served on him, thus depriving him of proper notice; [2] no advisor being provided for the service of the charge, nor to help with the consideration of the penalty offer; [3] Inadequate notice or

postponment was issued in the case (e.g., see above at 6-1); [c] and Ms. Rodrigus or Ito Unlawfully entered a penalty offer Form in said case, in order to deprive plaintiff of a hearing (note: she processed said Form without a readable signature or printed name to indicate an authentic or authorized staff member who witnessed plaintiff accepting the penalty offer Form). Thus plaintiff was deprived of a Fair hearing/due process. Plus penalized 3-day(s) of seg, - by said officials who breached their duty - and his appeal of said issues was unsuccessful.

(J) Upon being released from seg, on/about May 1, 2014, Plaintiff was again unlawfully subjected to the 'SLU' (see above at D, E, G, & H, for related and additional facts, points/contentions), where he suffered several violations, i.e., [a] He was subjected to further religious rights issues and intimidations, - by said A/W, and others - (Plus he also pursued the fact - or issue - of VDOC officials via, policy(s)/customs not allowing him or muslims to offer salat (prayer) on the yard or in the pod during rec, and etc; [b] Being again compelled to use/consume contaminated water which resulted in some/more health issues, Thus violating plaintiffs rights); and [c] being unlawfully subjected to the 'evidence based program' (EBP) which systematically deprived inmates/him of of due process, privileges and etc (Plus Ms. Wallece prevented inmates from accessing said policy or procedure). Thus, Plaintiff was further deprived of his/said rights and privileges.

(K) As a result of being housed in said building/program, SIISP officials subjected Plaintiff to several denial of legal access (which affected some of his cases - negatively-), e.g., [a] he was prevented from receiving legal advice and authorities that were not available at the prison from one/any of the institutional attorney(s); [b] he was prevented from seeing or confering with any of the institutional attorney(s) for several years, and [c] The legal materials in the prisons law library not being adequate and inmates not

being allowed Unhindered access to said authorities, (Plus, inmates were being prevented from having all of their legal materials -with them- while in Segregation), Thus Violating Plaintiffs right(s) to access The Court(s). See also below at "138".

(L). Plaintiffs efforts to challenge said issues (and others), were circumvented by SIISP and VDOC officials, e.g., Ms. James -The grievance coordinator -always breaching her duty by preventing him/his Complaints and grievances from being filed base on fraudulent reasons and informed Mr. Hayes (Plus other SIISP staff) So adverse action could be taken to stop his efforts - i.e., See above(s).

132.                    (5TH). Due to the facts above - at #39 to 42 - Plaintiff intends to proceed under Rule 5.1, Fed. R. of Civil Proc., to challenge the Constitutionality of VA Code §8.01-691 (and if need be §17.1-606) which Violates(ed) the U.S. Constitution, Amendment 1 and 14 by Violating his rights to access The Court, Due process, and equal Protection, in That:

(A). VA Code, §8.01-691, is written in a way (which is Vague enough) to deny (some) indigent inmate(s) access to the Court(s), e.g., inmates who have no Money - at the time of Submitting their application(s) - to pay all/part of a filing fee(s) and cost(s) of The court are denied access to it. i.e., Said Statute allows a State Court/Judge to consider a certified Copy of a inmate(s) proceeding year(s) trust account Statement(s), Then it States that... "if the Court determines The prisoner has had no deposits in his... account for the Proceeding 6- Months, the Court Shall Permit the prisoner to Proceed Without paying the fee and cost..." —

(B) But, if a inmate had no access to actual fund(s) at the time his application(s) was submitted to the court, and/or the "deposit(s)" reflected in his account during said time period(s) was no longer available to him, or they weren't an adequate amount to satisfy said court fee(s)/cost(s), then a court - per said statutes' conditions - can (still) deny the in forma pauperis request/application. — and

(C). As such, said code - § 8.01-691 - (unlawfully) imposes discriminatory sanctions and penalties upon (some) indigent inmates with no regard to their ability to pay the courts filing fees and costs, at the time of filing/submission.

Said courts' order - on may 16, 2016 - which denied plaintiffs' application for in forma pauperis status, (due to said statute), dispite the fact that his cirtified institutional account reflected that he did not have $344.00 - at the/that time - to send to the court. A factor which should have been controlling in such situations, but VA. code § 8.01-691, does not address it. — This ultimately causing plaintiffs' complaint to be dismissed because he couldn't get (or save up) the required $344.00 fast enough to send to the court/clerk, thus, resulting in plaintiff(s) constitutional rights being violated.

133.        (6th) - Denial of legal access/means at WRSP -, i.e., plaintiff contend(s) that several practices of WRSP officials systematically deprived him of access to legal means, materials/resources, and assistance.

(A). It took - on average - about a year for (most) inmates at WRSP to obtain a meeting with the institutional attorney to seek legal counsel. Plus, attempts to contact or communicate with said

attorney – Via, the mail – to ask for legal advise (and authorities that aren't available from the WRSP Law Library) have never been responded to. — Upon said issues being presented to agents (1),(2),(3),(4),(5),(6),(7),(8),(9),(10) and (12) — see above facts for the specifics/events – in 2016-18 (See below facts too), no adequate reply was provided, and the institutional attorney – upon being seen on 2 dates in 2017 by Plaintiff – had stated that he has no control of the scheduling at the prison and that, some of said agents were responsible for that, (Plus that he had been instructed – by them – not to respond to, all or any letters from inmates at the prison unless given the go ahead by them. Thus, inmates at the prison when being deprived of legal access and other rights by the unlawful conducts – presented herein – of said agents which also violates the US., Constitution and other law(s).

(B). Legal information and research web(s) being obstructed or impeded by the Law Library at WRSP because: inmates' general population are not allowed, to physically access the law library – or in person –; inmates are not allowed to shepardize case law (and other authorities, e.g., annotations of statutes/rules), nor can they conduct legal word(s) and/or phrase(s) searches; inmates are not permitted access to writing manuals, some forms, general "how-to" guides for the lay person, Plus legal practice and procedure manuals or treatise; and it took – about – 3 weeks on average to provide (some) requested legal materials (Plus alot of times noting or the wrong authorities/items are provided). — These deprivations were/are intentionally perpetrated (some times) by said officials/agents to circumvent the legal pursuits of inmates at the prison.

(C). The process to obtain legal copies – of essential documents – is flawed (in some or a few instances), i.e., if there's an emergency or a insisting court deadline, (some) officials still make inmates submit a copy(s) request form, into the business office.

and upon that office or departments approval (which might be up to
a week) the copies are -then- made/provided; upon said copies being
made, inmates are not allowed to be present in person, which leads to
WRSP staff reading said materials and if they don't like its contents
for some reason they toss some of those documents and claim to have
lost them - or not provide said documents copied-; nor do WRSP officials
allow inmates to purchase or possess any carbon paper(s) - in order to
ease their hardship(s) with obtaining photo-copies (of hand-written
applications) — Thus these practices are violations of rights too.

134        .: Plaintiff submits that as a result of those conducts
(and/or the inadequate policy(s) and custom(s) at WRSP to access legal
means) several of his litigation were adversely affected, E.G., after
months of not getting any requested law books from the law library to
help him file a federal habeas corpus on 3-judgment orders from Fairfax
County, (nor was he ever provided with a WRSP law library resource list -
which lists what authorities were available), plaintiff asked agent (12) - on/about
May 11, 2017, why he couldn't get any "how-to" guides to help him file said
applications, and he responded that because inmates kept taking out papers
from the law books he was responsible for, when-ever he sends them to
inmates, he stoped sending them." —— In said cases, (see above at #86 c)
                        -or first-
Plaintiff wanted to file a second/successive, habeas on the fact that his
lawyers were ineffective for failing to address the "misidentification(s)" in
some of his case(s), (see above at #36 in part), plus other (jurisdictional) issues, i.e.,
per Martinez v. Ryan, 566 U.S., (2012) and McQuiggin v. Perkins, 569 U.S. 383, -
(2013), Plaintiff was going to contend that because Va.; state law requires
a prisoner to raise an ineffective assistance of trial counsel claim(s) in
a collateral proceeding, and that said stage was the equivalent of a
direct appeal as to those claim(s) but Plaintiff did not have the aid of

a counsel for them, his constitutional rights was violated. (note: plaintiff also asked agent (12) why he couldn't get any/the above case law(s) Shepardized, nor annotations of some state/federal statutes/rules, and a legal word/phrase searches,? and said agent responded that none of those was available at WRSP.) So due to the above(s) plaintiff asked agent (11) for an informal complaint form to pursue the issue(s) but he was told none would be given because he was asking for a service. Plaintiff did find ways to preserve the issue around may/june 2017. — Also, the law books that plaintiff was asking for/about were habeas corpus checklist, civil rights actions, post conviction remedies, constitutional rights of prisoners, federal habeas corpus practice & procedure, plus others. In addition he did take the following action in the past, e.g., filed a state habeas in Fairfax Co, circuit court on/about 2-22-contending that his lawyers Mr. Todd Petit & Ms. Alene Grabauskas were ineffective counsels for inducing a plea in case #96842 that was not voluntarily made with an understanding of the charge(s) & consequences; denied the right to appointment of expert denied the right to direct appeal (because he told said lawyers to appeal the judgement at sentencing, but they never did); and etc., Application dismissed june 4, 2002, appeal denied shortly after, renewed habeas to the supreme court of Va., in 2005 (same claims), dismissed shortly thereafter, and a Federal habeas was filed (Re: 2:05 CV351) which was also denied (Plus its appeal too). In case #K98058, a state habeas was filed in Fairfax Co. circuit court in 2008 (Re: case # CL2008-7267) which contended his lawyer David C. Jones had unlawfully induced a plea in said case by telling plaintiff - in 2000 - that there was still parole in VA; plea violated the law because his lawyer nor the court advised plaintiff that per §16.1-272(A) only the judge can sentence him in the case because he was a juvenile - at the time - thus due to the above(s) said plea wasn't knowingly & voluntarily made; and etc, application was dismissed on july 25, 2008, an appeal to the VA, supreme court was denied on aug 21, 2009 (Re: Record No. 082567), issues renewed in 2012, in the VA, supreme court (Re: record No. 120172) denied, Plaintiff followed

up with a habeas application to the U.S. district court -Norfolk division- (Re: action No. 2:12 cv 290) presenting said claim(s) and more but they were dismissed, and an appeal failed too. For the case of #96843, plaintiff wanted to present a refined version of the claim(s) presented in #96842, plus the fact that due to said misidentification issue, the state violated a right tied to the accurate ascertainment of guilt (see: Dretke v. Haley, 541 U.S. 386 (2004).

135.    In about early 2017 when plaintiff learned that his complaint wasn't filed in 2016 - see above at #39-42 - he payed a jailhouse Lawyer (who was in B1-10) about $60.00 in commissary for him to help plaintiff find a way to address his civil issues, (because WRSP wasn't allowing him to get requested/needed authority(s) from the law library, plus no access to the institutional attorney). After looking over plaintiff's file(s), said inmate drafted a §1983 complaint for him where he combined said claim(s) with (related) issues that took place in 2015-16 (at STVSP) and told plaintiff that when the VA. Supreme court denies his appeal, he had about 30 day(s) per state law to file that application in the federal court(s). Plaintiff responded that he knew nothing about the §1983 process, and said jailhouse Lawyer - who had successfully litigated several issues in that arena- told him not to worry because he would help plaintiff along the way. Soon then after plaintiff approched agent(17) with said application, and some documents he needed notarized and asked for 2-copies of everything (after the notary), and agent(17) told him that a counselor/Mr. B. Turnbill was the only staff in the building with a notary stamp so he would have to wait till he does his part befor copies are provided. Said agent then took the documents and then he went into the staffs office with agents(9) and (11). The next day when plaintiff asked about his documents, agent (17) responded that he had took them into agent(11)s office because the copyier in that location was bigger and so better to handle making 2-copies of documents totaling over 100 page(s), (i.e., the complaint and some supporting exhibits), but that they had to wait for

some more ink to make the copies for him, However, when several day(s) passed
without said documents being provided plaintiff approached said agent(s) and
asked for his documents back, but agent(11) claimed that they got lost, so
when ever they came accross them they would be returned, this never took
place so when the Supreme Court of VA, issued their ruling denying said appeal
plaintiff asked said inmate if he could write out another complaint for him, and
he told plaintiff that agent(11) had informed him that he had been asking
why staff had given him a job in the pod but wouldn't give plaintiff one, so
for that reason (which plaintiff submitted that agent(11) had fabricated) he
wasn't going to help plaintiff, Thus plaintiff took to writing said complaint
out him-self and filed it on the issue, but it was latter deemed inadequate
(Re: Ofori V. Clarke, et al, Action No. 2:17cv242) and the case was dismissed latter.
(Note: upon information and belief, plaintiff submits that said agents intentionally
discarded his document(s), also in retaliation(s agent(s) wouldn't give complaint(s)):

136.                    Although plaintiffs current housing or security level —
and the prison limiting free (inmates)) movement's — does not allow one to physically
attend or access the Law Library, (dispite some inmates being allowed to
access the regular library, School - DCE/VCE, Programs, and etc together), since
the main purpose of the VDOC prison(s) legal facilites is to provide access to
the Courts Through the availability of legal materials from The Law Library
and/or proper assistance from persons trained in the law, these means or
resources were inadequate at WRSP due to said policy(s) and custome(s). (See all
of the above facts), Thus, most of them could be mitigated if physical access
to the law Library was provided for all/most G.P. Prisoners, in order to
afford a 'Social/Collective (advantage) legal learning setting. — Though most
of plaintiffs submitted complaints on the above issues were circumvented or
disappeared, he still found way(s) to preserve them, e.g. at, WRSP-18-INF-0383,
WRSP-20-INF-01949, and other(s) in Griev. Proc. / CorisSnap - plus letters/otherwise.

78

137.        _Finally_, in relation to some of the above facts, regarding the denial of adequate access to legal mean(s), Plaintiff submit(s) that:

A). When Plaintiff told agent(1) about said issue(s) — see above at #35 — he stated that "that's the policy here at Wallens Ridge so you will have to deal with what we got," then agent(6) responded that "She told you what and how it is," before he and agent's (3) plus (4) walked off.

B). On/about sept 23, 2017, agent's (9),(11),(18),(23),(24) & (30) had the bottom tier lined up in the pod during rec, and searched everything or one, at it's conclusion, they took Plaintiffs book the Georgetown Law Journal — 2008 ed (which cost him about $27.00); about 46-page(s)-copies- from the book Michie's Jurisprudence, vol. , which cost him about $0.25, a page to get from the VA. Supreme Court law library; plus other item(s), — see above at #83d —, (all taken possibly in retaliation)

C). On Nov 14, 2017, while agent (2) was in B6-pod — see above at #83F — Plaintiff had also complained about the inadequate access to legal means at the prison, that was stifling some of his legal effort's — as presented above —(and that he had to result to paying for some authorities, from said law library, because he couldn't get them — or any help — vie, WRSP legal mean's) —Plus, plaintiff would bring said issue(s) up to him most of 2018, and the early part's of 2019, but he would alway's respond that plaintiff should send him a request form about it, however upon doing so none of them was responded to, and follow up complaint form's on the matter(s) are alway disappered by agent (s), who claims not to have gotten them.

D). On Nov 21/22, 2017, when agent(4) was conducting his rounds in the pod - See above at #83 g - Plaintiff also complained about not being able to get alot of legal authorities he needed from the Law Library (which was impeding his/said litigation efforts) and that he didn't have alot of money to keep paying for copies from said Law Library, just to compleat legal researches, Plus he had been bared the VA. Supreme Court Law Library from getting any more item(s) from michies Jurisprudence.

E). On/about march 9, 2018, agent(s)(27) and (28) lined the inmates in C6-bottom tier up during rec., and searched everyone, were they took 3-honey bunz plaintiff was going to use to buy some forms he needed, (i.e., 2-complaints and grievance forms), Plus about 32-pages (copies) from 'American Jurisprudence'. In addition, The same thing took place on/about April 2, 11/16, 2018 by said agents (and agent(8)) and they collectively took about 126-pages of said documents (which, were a mixtur of said jurisprudences, and some 'american Law reviews, plus other documents) they always claimed that WRSP policy did not allow inmates to have those documents in the pod. — and —

F). From about mid to late 2018 (e.g., See above(s) at #117 d,e) agent(s)(8)(28)(31), -and other staff - regularly took/discarded plaintiffs personal legal documents(s) he had with him in C1-pod, -and never returned them - because they claimed WRSP policy didn't allow them in the pod.

Any facts above (from #7 to 137) which narrates event(s) that post date(s) the filing of this action is not ment to be amended/supplemented here (or to the case, e.g. Re: #88)

138.                    Addendum: In 2017 to 2019, Plaintiff also wanted to
challenge the judgment order in Case #96843, where it was held:
    A) at a hearing dated: June 30, 2000, (later entered on July 11, 2000), that, -
    B) total sentence imposed was fifteen (15) years, (under the VDOC), and,-
    c) C) Post release supervision. In addition to the punishment imposed
        above, the Court imposes a term of three (3) years. The additional
        three (3) year term is suspended and the defendant shall be subject
        to a period of Post release Super-vision of three (3) years, all
        pursuant to §19.2-295.2. — A Fairfax Co., Circuit Court order. —
because said order as drafted, did not comply with the mandatory requirements
of post-release incarceration/supervision for the underlying non-suspended sentences
pursuant to VA Code §§18.2-10(p); 19.2-295.2(B); 19.2-307; Plus VA S. Ct, Rule 3A:22
(Form 10), and was, therefor, void ab initio. — I.E., The Supreme Court of VA, has
held that the relevant provisions of §§18.2-10(g) and 19.2-295.2(A) and/or (B)
are mandatory," Wright v. Com., 275 Va. 77, (2008), apply to felony offenses,
Alston v. Com., 49 Va. App. 115, (2006), and must be pronounced at the time the
Court imposes sentence for the underlying felony offense. Eggleston v. Com.,
2017 WL 3994763 (Va. App. 2017). Thus, the Fairfax Co., Circuit Court had the
authority under §19.2-295.2(B), — indeed, the non-discretionary obligation,
once it was determined that said (15) years non-suspended sentence had to be
served with an additional (3) years of post-release supervision, to impose it under
the supervision and review of the VA, Parole board, it did not. The Fairfax
Co., Court was further required, under §18.2-10(g) to impose a linked suspended
sentence of post release incarceration for said non-suspended sentence and/or
the post-released supervision, it did not. Simply put, the order didn't comply
with said law(s). (See, Thomas v. Com., 268 Va. 301 (2018), and Rigdon v. Com., 2019
Va. App. LEXIS 7 (circuit Ct, of the City of Portsmouth -2019)), So due to the said
retaliatory/general denial of legal means at WRSP, Plaintiff couldn't pursue the issue[6]

# IV. CLAIMS FOR RELIEF

139.        Plaintiff's reallege and incorporate by reference paragraphs #7 to 138 (Plus, in relation to the above contentions, plaintiff submits that other recorded/documented proof — to support his points/possition — can be found in VACORIS and/or WRSP log books)

140.        The (intentional or deliberate) actions, omissions, and failures of said agent(s) — as presented in the above pertinent counts — who or which subjected plaintiff to said (targeted) assault(s), retaliation(s), harassment(s), conspiracy(s), abuse(s), and other/etc illegal conducts, for his (submissions, applications, letters of) complaints and grievances about (said) issues — and disciplinary procedure challenges/appeals, — was a violation of the 1st, 8th, and 14th, amendment(s) to the U.S. Constitution; and 42 U.S.C., §1997d.

141.        The (intentional or deliberate) actions, omissions, and failures of said agents — as presented in the above pertinent counts — who or which deprived plaintiff of (adequate) access to legal means (materials or resources, and assistance(s)) amounted to him being denied access to the court(s), in violation of the 1st, 4th, 5th, 6th, 8th, and 14th, amendment(s) to the U.S., Constitution. (note: also some was done via, said inadequate policy(s) & customs at WRSP).

142.        The (intentional or deliberate) actions, omissions, and failures of said agents (via, said inadequate policy(s) and custom(s) — as presented in the above pertinent counts — who/which (unlawfully) deprived plaintiff of a transfer (and/or subjected him to a transfer to a higher security level), without any/the safeguards of due process being observed, was a violation of the 1st, 4th, and 14th, amendment(s) to the U.S. Const,

143.        The (intentional or deliberate) actions, omissions, and failures of said agents — as presented in the above pertinent counts — who or which circumvented and deprived plaintiff of (adequate) access to a means to petition officials for redress of issues, i.e., the complaint and

grievance process (via., WRSP orientation Manual/VDOC-O.P. 866.1, — their policy and customs), Thus Further subjecting him to said (unlawful) Conditions that or which was causing him (said) loss and harm — to his §1983 and other rights — amounts to a violation of the 1st, 8th, and 14th Amendment(s) to the U.S. Constitution.

144.            The (intentional or deliberate) actions, omissions, and Failures of said agents — as presented in the above pertinent Counts — which or who subjected plaintiff to a (void) VDOC Disciplinary Procedure (i.e., O.P. 861.1 — which plaintiff wasn't notified of till 2017); Procedural errors; circumventing processes, and/or denial of Due process (safe guard(s)), resulted (or play(ed) a part) in him being convicted of said (Fabricated) charges — which then deprived him of his personal property interest(s) — in violation of the 1st, and 14th amendments to the U.S. Constitution. — (note: some of those act(s) was done via., said inadequate policy(s) and customs(s) at WRSP).

145.            The (intentional or deliberate) actions, omissions, and Failures of said agents (via., said inadequate policy(s) and customs(s)) — as presented in the above pertinent Counts — who/which took, confiscated, (and stole) plaintiffs personal property — while being searched or in their care, custody, control and storage — (plus they — most times — Failed/refused to provide or serve him with any Personal property disposition Forms), and/or observe due process safe-guards, (which were sometimes in retaliation), was a violation of the 1st, 4th, and 14th amendment(s) to the U.S. Constitution.

146.            The (intentional or deliberate) actions, omissions, and Failures of said agents — as presented in the above Pertinent Counts — who/which subjected Plaintiff to reckless endangerment was a violation of the 1st, and 8th amendment(s) to the U.S. Constitution.

147.            The (intentional or "deliberate") actions, omissions, and Failures of said agents — as presented in the above pertinent

Counts—who/which was "indifference" to plaintiffs' safety, medical, legal security, dietary,—and other—need(s), was a violation of the 1st, 8th, 14th amendment(s) to the U.S. Constitution.

148.                    The inadequate manner/way VA Code §8.01-691 is written,—as presented in the above pertinent count—allows events where sometimes prisoners are (unlawfully) denied access to the court(s) in violation of the 1st and 14th amendments to the U.S. Const.

149.                    Plaintiff has no plain, adequat or complete remedy-at law to redress the wrongs described herein, Plaintiff has been and will continue to be irreparably injured by the conduct(s) of the defendants unless this court grants the declaratory and/or injunctive relief, which Plaintiff seek(s)


## V. RELIEF REQUESTED.

150.                    WHEREFORE, Plaintiff requests that the court grant him the following relief:

   A. Issue a declaration that the acts, omissions, and failures described herein—as pertinent to this relief—violate(s) the Plaintiffs' rights under the constitution and laws of the united states.— and,

   B. Issue a permanent (and/or preliminary) injunction order(ing) (that) said agent(s) or their subordinates to (immediately) revise (all VDOC and WRSP policy(s)/practice(s) which deprives plaintiff of his rights (and/or violates them), e.g.:

   1). Immediately revise the VDOC and WRSP grievance policy and customs to prevent officials from blatantly circumventing it/them (i.e., allowing inmates to submit their complaints in via, the j-pay kiosk and tablet(s) systems,

(or mail to Richmond, VA—Doc), and/or the phone, so no human element can disapper them, (Plus incorporate some whistle-blower safe guard(s) like not requiring one to disclose their identity if their contentions can be proved with undeniable evidence - video/other recordings, and documentations).

2). Immediately revise the VDOC/WRSP policy and practice(s) that denies or impedes legal access and means at the prison (like allowing him to attend the Law Library in person or Physically - while in G.P., - and etc). *if court deadline are shown*

3). Immediately revise the VDOC/WRSP policy and custom(s) that violates inmates rights during disciplinary Proceedings.

4). Immediately order said agents to reinstate (or disgorge) anything that was unlawfully taken, e.g., Personal property(s), transfer(s), and etc.

C. Award 'Compensatory Damages' in the amount of $31.000.000 against each proper agent/defendant jointly and severally for the mental, physical and emotional diress (Plus other loss) Plaintiff has suffered.

D. Award 'Monetary/nominal Damages' in the amount of $31.000.000 against each proper agent/defendant jointly and/or severally for the mental, physical and emotional diress (Plus other loss) Plaintiff has suffered.

E. Award 'Special Damage(s) in the amount of $9.000.000, against each proper agent/defendant jointly and/or severally for the mental, physical, and emotional diress (Plus other injurie(s) Plaintiff has suffered.

F. Award 'Treble Damage(s) in the amount of $900,000, against

85

each proper agent/defendant(s) jointly and/or severally for the mental, physical and emotional diress (Plus other injurie(s)) Plaintiff has suffered, due to said agents actions and reaction(s) that violate(s) 42 U.S.C. §§ 1981, 1983, and 1997d, Plus 28 U.S.C. § 2254 (and others), as well as VA, Code § _____ to (Plaintiff) challenging some/his conviction(s), sentence(s), and prison condition(s), Id.

G. Award 'Punitive Damage(s)' in the amount of $7,000,000, against each proper agent/defendant(s) jointly and/or severally for the mental, physical and emotional diress (Plus other injurie(s)) Plaintiff has suffered.

H. Award/Grant any additional relief this court deems, just, proper and equitable, — along with the court(s) cost, filing fee(s) pre paid postage, copie(s), minutes, Hour(s), Days, Month(s), and year(s) of legal researching and/or structuring of this litigation against these defendant(s) et al., for their constitutional and statutorial violation(s) wherein Plaintiff has sustained mental, physical and emotional diress or injuries(s) — Plus, all he is ENTITLED' to.

Respectfully Submitted.

June 17, 2023.

BY: Terry K. Ofori.

Dated.

Terry K. Ofori, #1165768
Red onion State Prison
~~Wallens ~~ridge~~
P.O. Box 970
Pound, ~~Big~~ VA. 24279.

_TRIAL  BY  JURY  IS  DEMANDED_

86.

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true except as to matters alleged on information plus belief, and as to those I believe them to be true, I certify under penalty of perjury that the foregoing is true and correct.

Executed at Pound, VA, on June 17, 2023.

BY: Terry K. Ofori

Terry K. Ofori, #1165768

(28 U.S.C.§1746(2).

## ADDENDUM.

First: With respect to the contention(s) in the 'Compl., at #10-15, (plus other parts of plaintiff's application), where (VDOC or) WRSP-staff had prevented him from accessing the complaint & grievance process, were also (an) intentional actions — via., their customs and practices — to spoil his litigation efforts, thus preventing him from having essential evidence/event(s) reviewed, investigated, and stored for his future litigation(s).

Second: With respect to the contention(s) in the Compl., at #73-75 — Plaintiff submits that agent(s) (plus, other WRSP-staff) subjected him to cell confinement for several days after said targeted cell search.

Third: With respect to the contention(s) in the 'Compl, at #122-127 — Plaintiff submits that he was never informed of any (active) WRSP-policy that prevented him or inmates from putting item(s)-like soap/otherwise-on the (cells) wall.

   __Fourth__: With respect to the Contentions in 'Compl.,
at #131, P-72' —— Plaintiff ment to add Section-(m), to State;
"The relief(s) that Plaintiff Sought (in said action) Was e.g., [1]
declaratory judgment Stating that Said agents/defendants
Unlawful action(s) Violated Plaintiff(s) Constitutional and
other right(s); [2] injunctive order(s) to address Said Unlawful or
Unconstitutional Violation(s); [3] about $90,789.48 in Compensatory
damages; [4] about $25,000.00 in punitive damages; [5] and etc.

   __Finally__: Plaintiff Submit(s) that the Court also has
Supplemental jurisdiction over his State law (tort) claim(s), Via.,
Va., Code § 8.01-2(3), Plus VA, Constitution.

Terry K. Ofori, 1165788

Red Onion State Prison

P.O. Box 970

Pound, VA. 24279.

VA DEPTARTMENT OF CORRECTIONS
HAS NEITHER CENSORED OR INSPECTED
ITEM THEREFORE THE DEPARTMENT DOES
NOT ASSUME ANY RESPONSIBILITY
FOR IT'S CONTENTS

(Legal
Mail)

U.S. Di

Western

Office of

210 Fran

Roanoke,



**UNITED STATES POSTAL SERVICE ®**

**USPS TRACKING #**

9114 9999 4431 4768 6333 16

LAB400R Aug. 2013
7690-17-000-0669



PRI
★ M

For Dome

7021 272





US POSTAGE AND PITNEY BOWES

ZIP 24279    $ 016.85
02 4W
0000366944 JUN 29 2023

RECEIVED

JUN 29 2023

MAILROOM

(Legal Mail)

istrict Court
District of VA.,
the Clerk
klin Road, Suite 540
VA. 24011-2208.



RIORITY
AIL ★

TRACKED
★★★
INSURED
★

UNITED STATES
POSTAL SERVICE®

stic and International Use    Label 107R, May 2014